23216

Francis Edwin BASS, Jr.; Marvin L. Jones; James R. Marvin; Wilton A. Hockenberry; Catherine Louise Moyers; John Gilreath; Mildred B. Jenkins; J. Loring Jenkins, Individually and for the Benefit and on Behalf of all others Similarly Situated, Respondents/Appellants v. The STATE of South Carolina, a Body Politic, and the South Carolina Tax Commission, Appellants/Respondents.

(414 S.E. (2d) 110)

Supreme Court

*Chief Deputy Atty. Gen. Joe L. Allen, Jr., Deputy Atty. Gen. Ray N. Stevens* and *Asst. Atty. Gen. Arlene D. Hand,* Columbia, *for appellants/respondents.*

*Gene M. Connell, Jr.,* and *Edward T. Kelaher,* both of *Kelaher, Haar, Bass & Connell,* Surfside Beach, *for respondents/appellants.*

*Scott Y. Barnes,* of *Holmes & Thompson,* of Charleston, and *William J. Quirk,* of *USC School of Law,* Columbia, *for amicus curiae Tax Section of the South Carolina Bar.*

Heard Oct. 30, 1991.

Decided Jan. 27, 1992.

*Per Curiam:*

This matter is before us on remand from the United States

Supreme Court. — U.S. —, 111 S. Ct. 2881, 115 L. Ed. (2d) 1047. In *Bass v. State*, 302 S.C. 250, 395 S.E. (2d) 171 (1990) *(Bass I)*, we held that federal retirees were not entitled to a refund for income taxes paid pursuant to a statute which later was determined by the United States Supreme Court to be unconstitutional.[1] The federal retirees appealed our decision in *Bass I* to the United States Supreme Court. The Supreme Court granted the retirees' petition for certiorari, vacated our judgment in *Bass I*, and remanded the case to this Court for further consideration in light of *James B. Beam Distilling Co. v. Georgia*, 501 U.S. —, 111 S. Ct. 2439, 115 L. Ed. (2d) 481 (1991). This Court then issued an order requiring the parties to brief the following issues:

> (1) What is the impact of the *Beam* decision on this Court's prior decision in this case?;
> (2) Whether federal retirees are procedurally barred from recovery because they failed to proceed under the applicable state statute?;
> (3) Whether federal retirees were properly certified as a class under state law?; and
> (4) Whether there are any other possible procedural bars under state law to federal retirees' recovery?

## I. DISCUSSION

### A. PROCEDURAL BAR

■ Initially, we note that our decision to affirm *Bass I* is based primarily on the adequate and independent state ground that the federal retirees are procedurally barred from recovery because they failed to proceed under the applicable state statute. *See Michigan v. Long*, 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed. (2d) 1201 (1983) (requiring a plain statement that the state court decision rests upon adequate and indepen-

---

[1] The South Carolina statute granted retired federal employees a $3000.00 exemption of retirement income from South Carolina income tax while retired state employees received total exemption of their retirement income. In *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 109 S. Ct. 1500, 103 L. Ed. (2d) 891 (1989), the Supreme Court held that state taxation of income of persons retired from employment or service with the federal government at a greater rate than taxation of income of persons retired from state service, violated the doctrine of intergovernmental tax immunity and thus was constitutionally prohibited.

dent state grounds). *See also Harris v. Reed,* 489 U.S. 255, 109 S. Ct. 1038, 103 L. Ed. (2d) 308 (1989) (a state court may rely on a procedural bar as an independent basis for its disposition of the case).

As we stated in *Bass I,* the proper refund statutes under which the federal retirees should have proceeded are S.C. Code Ann. §§ 12-47-210 and 12-47-220 (1976). Section 12-47-210 provides, in pertinent part, "[w]hen the State or any county charges or levies *any tax whatsoever*" which the taxpayer conceives "to be unjust or illegal for any cause," the individual may pay the tax under protest. (emphasis added). Section 12-47-220 then states that "[a]ny person paying any taxes under protest may at any time *within thirty days* after making such payment, but *not* afterwards," bring an action for the recovery thereof. (emphasis added). However, instead of proceeding under §§ 12-47-210 and 12-47-220, the federal retirees chose to bring their refund action under S.C. Code Ann. § 12-47-440 (1976). Section 12-47-440 provides that "whenever it shall appear to any taxpayer that any *license fee or tax* imposed under this Title has been erroneously, improperly or illegally assessed, collected or otherwise paid over to the Commission," the taxpayer can seek a refund "within a period of three years from the date the license fee or tax was due to have been paid." (emphasis added).

The federal retirees contend that our case law supports the theory that a refund of income taxes can be recovered under Section 12-47-440, and that if we now hold that this statute is inapplicable, we would deny the retirees their due process rights. We disagree.

This Court has previously stated that "the exclusive remedy for contesting an alleged erroneous assessment of *income taxes* [is] by payment under protest of the tax claimed as illegal and a suit at law for recovery of the sum so paid, in accordance with Sections 65-2661 and 65-2662 of the Code." [predecessors of §§ 12-47-210 and 12-47-220]. *Perpetual Building & Loan Assoc. v. S.C. Tax Comm'n,* 255 S.C. 523, 526-27, 180 S.E. (2d) 195, 197 (1971). *See also City of Columbia v. Glen Falls Ins. Co.,* 245 S.C. 119, 139 S.E. (2d) 529 (1964) (the general statutory remedy for recovery of taxes illegally charged

or assessed is found in Section 65-2661 *et seq.* of the 1962 Code of Laws). In fact, this Court has never awarded a taxpayer a refund of income taxes under Section 12-47-440.[2]

In every case brought pursuant to Section 12-47-440 (other than the two cases mentioned in footnote 2), the taxpayer was seeking a refund for license-type fees or taxes collected by the Commission. *See, e.g., Colonial Stores, Inc. v. S.C. Tax Comm'n,* 253 S.C. 14, 168 S.E. (2d) 774 (1969) (self-redeemer of trading stamps brought action pursuant to Section 65-2684, the predecessor to Section 12-47-440, to recover license type/use taxes paid to the Commission); *Dale v. S.C. Tax Comm'n,* 276 S.C. 110, 276 S.E. (2d) 293 (1981) (action to recover documentary stamp tax); *Shasta Beverages v. S.C. Tax Comm'n,* 280 S.C. 48, 310 S.E. (2d) 655 (1983) (action to recover soft drinks license taxes); and *Duke Power Co. v. S.C. Tax Comm'n,* 292 S.C. 64, 354 S.E. (2d) 902 (1987) (action for a refund of corporate license fees). These cases support our conclusion that Section 12-47-440 is not a general refund statute, but instead, applies only to license type fees or taxes.

In contrast to the lack of authority supporting the retirees' claim that an income tax refund action can be brought pursuant to Section 12-47-440, there are numerous cases in which income tax refunds were sought pursuant to Sections 12-47-210 and 12-47-220, or their predecessor statutes, Sections 65-2661 and 65-2662. For example, *see M. Lowenstein Corp. v. S.C. Tax Comm'n,* 298 S.C. 93, 378 S.E. (2d) 272 (Ct. App. 1989); *Dalton v. S.C. Tax Comm'n,* 295 S.C. 174, 367 S.E. (2d) 459 (Ct. App. 1988); *Pendarvis v. S.C. Tax Comm'n,* 285 S.C. 381, 329 S.E. (2d) 766 (1985). *See also* the cases cited in the Annotations following Sections 12-47-210 and 12-47-220.

Our decision in *Perpetual,* and our prior case law interpret-

---

[2] There have been two cases in which taxpayers unsuccessfully sought an income tax refund under Section 12-47-440, or its predecessor, Section 65-2684 of the 1962 Code. However, the issue of whether Section 12-47-440 was the appropriate statute was not raised in these cases and, in any event, would not have been reached, as the cases were dismissed because the taxpayer failed to comply with the prerequisites to recovery. *See Guaranty Bank & Trust Co. v. S.C. Tax Comm'n,* 254 S.C. 82, 173 S.E. (2d) 367 (1970) (Court sustained Tax Commission's demurrer because taxpayer failed to comply with condition precedent to recovery); *Bobo Bros., Inc. v. S.C. Tax Comm'n,* 271 S.C. 18, 244 S.E. (2d) 519 (1978) (Court sustained Tax Commission's demurrer because taxpayer failed to pay the disputed taxes as required by Section 12-47-440).

ing Section 12-47-440 and Sections 12-47-210 and 12-47-220, clearly demonstrate that this Court has never authorized an income tax refund action pursuant to Section 12-47-440 and always has required an individual seeking an income tax refund to proceed under Sections 12-47-210 and 12-47-220. Thus, contrary to the retirees' assertions, this Court's prior case law could not have misled the retirees into believing that Section 12-47-440 was the appropriate statute under which to proceed, and, in fact, should have notified the retirees that the applicable statutes were Sections 12-47-210 and 12-47-220.

■ Despite the fact that this Court has never authorized an income tax refund action pursuant to Section 12-47-440, the Tax Commission has issued administrative interpretations stating that Section 12-47-440 applies to income tax refunds. In addition, after the *Davis* decision was announced, the Tax Commission issued several press releases in which it advised the retirees that they could "protect themselves against the expiration of the three-year statute of limitation" by writing a letter to the Tax Commission or by filing an amended return for the 1985 tax year. The retirees contend that since the Tax Commission has previously interpreted Section 12-47-440 as applying to income taxes, it is estopped from now arguing that Section 12-47-440 does not apply to income taxes. While we agree with the retirees that it is very unfortunate the Tax Commission has instilled false hopes by advising persons that there is a three year statute of limitations for income tax refunds under Sections 12-47-440, we are not bound by the Tax Commission's misinterpretation of Section 12-47-440. Indeed, in light of our prior case law, we are obligated to correct this erroneous interpretation of Section 12-47-440.

■ The retirees also assert that allowing Section 12-47-440 to be used to refund only certain types of taxes violates the equal protection clause. This argument is meritless. If a statute treats all persons alike under like circumstances and conditions, it cannot be said to deprive anyone of equal protection of the laws. *Carter v. Linder*, 303 S.C. 119, 399 S.E. (2d) 423 (1990). Here, all members of the class of taxpayers seeking income tax refunds are treated alike, as they are all bound by the procedural requirements in Sections 12-47-210 and 12-47-220. The equal protection clause does not require a statute

authorizing a refund for one type of tax to provide the identical procedural mechanisms which are provided in a separate statute for a different type of tax.

## B. EFFECT OF *BEAM* DECISION

■ As we noted earlier, our decision rests primarily on an independent and adequate state ground. However, we discuss the effect of the *Beam* decision on our prior opinion as this was the basis of the remand from the Supreme Court.

The Georgia tax statute at issue in *Beam* imposed an excise tax on imported liquor at a rate double that imposed on liquor manufactured from Georgia-grown products. In 1984, the Supreme Court, in *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 104 S. Ct. 3049, 82 L. Ed. (2d) 200 (1984), held that a similar Hawaii statute violated the Commerce Clause. Thereafter, James B. Beam Distilling Company, a manufacturer of Kentucky bourbon, filed an action in Georgia state court claiming that the Georgia statute also violated the Commerce Clause, and seeking a refund of taxes it paid under the Georgia statute for the years 1982-1984. The Court declared the statute unconstitutional under *Bacchus*, but refused to apply its ruling retroactively, thereby denying the requested refund. In so holding, the Court relied on *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S. Ct. 349, 30 L. Ed. (2d) 296 (1971), which held that a decision will be applied prospectively where it displaces a principle of law on which reliance may reasonably have been placed, and where prospectivity is on balance warranted by its effect on the operation of the new rule and by the inequities that might otherwise result from retroactive application. The Georgia Supreme Court affirmed. The parties then appealed to the United States Supreme Court, which reversed the judgment and remanded the case.

The only question presented in the *Beam* case was whether the Court's ruling in *Bacchus* should apply retroactively to claims arising on facts antedating that decision. Although it was a plurality opinion, a majority of the Court held that the application of the rule to the parties in *Bacchus* mandated the application of the rule retroactively in later cases.

Justice Souter, joined by Justice Stevens, determined that retroactivity was a matter of choice of law, "a choice . . . between the principle of forward operation and that of relation

backward." *Beam*, 501 U.S. at —, 111 S. Ct. at 2443, 115 L. Ed. (2d) at 487 (citing *Great Northern R. Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 364, 53 S. Ct. 145, 148, 77 L. Ed. 360, 366 (1932)). Justice Souter noted that there were three ways in which the choice of law problem could be resolved. First, a decision could be fully retroactive, applying both to the parties before the Court and to all others by and against whom claims are made without regard to when such claims arise. Second, a decision could be purely prospective, applying only to cases arising on facts postdating the pronouncement. Third, the new rule could be applied in the case in which it is pronounced, but not to other cases arising on facts predating the pronouncement.[3]

Justice Souter concluded that principles of equality and *stare decisis* required that "when the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata." *Id.* 501 U.S. at —, 111 S. Ct. at 2448, 115 L. Ed. (2d) at 493. Thus, Justice Souter specifically rejected the notion of modified, or selective prospectivity. Justice Souter left open the question of the propriety of pure prospectivity.

Justice White concurred in the judgment, but specifically did not reject pure prospectivity, finding that the propriety of pure prospectivity was settled by prior cases. Justices Blackmun, Marshall, and Scalia, also concurred in the judgment, but these justices would apply every new rule announced retroactively. Finally, Justices O'Connor, Rehnquist, and Kennedy dissented, holding that in order to determine whether a rule should be applied retroactively, the Court must undertake a *Chevron Oil* inquiry.

Since six of the justices concurred in the judgment, we know that a majority of the Court agrees that if a rule is applied to the litigants in the case on appeal, this rule must then be applied retroactively in all subsequent cases, thus precluding a *Chevron Oil* analysis. Consequently, the question in this case is whether the rule announced in *Davis* was applied to the parties in that case such that retroactive application of *Davis* is mandated by *Beam*.

We hold that the rule announced in *Davis* was not applied

---

[3] This method is called modified, or selective, prospectivity.

to the parties in that case, and thus, that *Davis* can be applied prospectively. *Davis* differs from *Bacchus* in that the retroactivity issue was not presented in *Davis*, while this issue was before the Court in *Bacchus*. Further, in *Bacchus*, the Supreme Court applied its rule retroactively to the litigants in that case. Conversely, in *Davis*, the retroactivity issue was not before the Court because Michigan conceded that the refunds were due to Davis under state law if the statute were held unconstitutional. Because *Davis* did not rule upon the issue of retroactivity, the doctrine of *stare decisis* does not apply. *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 73 S. Ct. 67, 97 L. Ed. 54 (1952) (in order for a case to be a precedent for another case, the court in the first case must have decided the issue presented in the second case). Furthermore, the principle of equality or equal treatment to similarly situated litigants does not require that all future litigants, including the litigants in the present case, are bound by the stipulation of the State of Michigan in *Davis*.

This conclusion is supported by Michigan's own interpretation of *Davis*. In *Fonger v. Dept. of Treasury*, 1990 WL 96942 (Mich. Tax Tribunal June 11, 1990) (WESTLAW), the court stated:

> The Court in *Davis* made no specific determination as to whether its decision shall apply prospectively or retroactively. Therefore the Court did not mandate refunds to any or all federal retirees who paid Michigan income tax. Any inquiry involving the application of refunds was apparently extinguished by the Department's concession that refunds would retroactively apply based upon an unfavorable ruling by the Court. . . .

In addition, several other courts which have been faced with this issue have also held that *Beam* does not mandate retroactive application of *Davis*. *See Swanson v. North Carolina*, 329 N.C. 576, 407 S.E. (2d) 791 (1991); *Sheehy v. Montana*, 820 P. (2d) 1257 (Mo. Sup. Ct. 1991); *Harper v. Virginia Dept. of Taxation*, — Va. —, 410 S.E. (2d) 629 (1991).

Therefore, because we find that the retroactivity issue was not decided in *Davis*, we are not foreclosed by precedent from

applying the three-pronged *Chevron Oil* test in deciding the retroactivity issue in the present case.[4] *Accord, Swanson, supra; Sheehy, supra;* and *Harper, supra.* Thus, we adhere to our *Chevron Oil* analysis articulated in *Bass I.*

## II. CONCLUSION

Our decision to affirm our prior decision in *Bass I* is based primarily on the adequate and independent state ground that the retirees are procedurally barred from recovery because they failed to proceed under the applicable state statute. However, we also hold that *Beam* does not mandate the retroactive application of *Davis.* As a result, we are free to utilize the *Chevron Oil* analysis to determine whether *Davis* can be applied prospectively. After having done such an analysis in *Bass I,* we conclude that *Davis* should be applied prospectively. However, even if we are incorrect and the Supreme Court does interpret *Davis* as being retroactive, we would still deny the retirees' refund as they are procedurally barred from recovery.

Having reconsidered our July 31, 1990 decision in light of *Beam,* we conclude that nothing articulated in *Beam* requires a different result from that reached in our prior decision. Accordingly, our prior decision in *Bass I* is

Affirmed.

---

[4] We do not read *Beam* as rejecting the *Chevron Oil* test. Four Justices clearly embrace the test's viability in determining retroactivity.