Joseph L. STRELECKI, June C. Lankford, Leeta Lankford, James O. Worrell, Neal W. Harris and Elizabeth B. Harris, Appellants,

v.

OKLAHOMA TAX COMMISSION, Appellee.

No. 77615.

Supreme Court of Oklahoma.

Sept. 28, 1993.

Order Clarifying Opinion on Limited, Grant of Rehearing March 22, 1994; As Corrected March 23, 1994.

Kevin "D" Watley, Norman, and Michael J. Kator, Kator, Scott & Heller, Washington, DC, for appellants.

E. Joe Lankford, Norman, for appellants June C. Lankford and Leeta Lankford.

David Hudson, Gen. Counsel, Stanley Johnston, First Asst. Gen. Counsel, Robert B. Struble, Asst. Gen. Counsel, Oklahoma Tax Com'n, Oklahoma City, for appellee.

OPALA, Justice.

The issue urged upon us on review is whether the *new rule* of federal law announced in *Davis v. Michigan Dept. of Trea-*

*sury*[1] applies retroactively to require refunds—on Taxpayers' *timely* claims for a *correct* amount—of state income tax overpayments on Taxpayers' federal retirement income excludable under *Davis?* We answer in the affirmative. The U.S. Supreme Court's recent jurisprudence in *Harper v. Virginia Dept. of Taxation*[2]—which applies the retroactivity analysis of *James B. Beam Distilling Co. v. Georgia*[3]—*mandates retroactive application* of the nondiscrimination principle announced in *Davis. State law affords these Taxpayers the remedy they seek.*

## I

## THE ANATOMY OF LITIGATION

The appellants [Taxpayers] are retired federal employees who received income from the United States during the years of 1985 through 1988 either as retired civil service employees or retired military personnel. During this period Taxpayers paid state taxes under Oklahoma income tax laws whose provisions subjected a portion of their civil service or military retirement income to state income tax while exempting from like taxation the retirement income of former state employees.[4] On March 28, 1989 the U.S. Supreme Court held in *Davis* a similar taxing scheme invalid.[5] Following *Davis,* Taxpayers timely filed amended returns, claiming refund of *voluntary overpayments of income tax* for four years, 1985 through 1988, both inclusive—*a period which represents the time immediately preceding the Davis opinion.*[6] Responding to *Davis,* the Oklahoma

---

**1.** 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989). For a discussion of the *Davis* rule, see Part II, *infra.*

**2.** 509 U.S. ——, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) (Thomas, J., delivered the opinion of the Court, in which Blackmun, Stevens, Scalia and Souter, JJ., joined, and in Parts I and III of which White and Kennedy, JJ., joined. Scalia, J., filed a concurring opinion. Kennedy, J., filed an opinion concurring in part and concurring in the judgment, in which White, J., joined. O'Connor, J., filed a dissenting opinion, in which Rehnquist, C.J., joined.).

**3.** 501 U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991).

**4.** The terms of 74 O.S.1981 § 923 of the "Public Employees Retirement System Act" provided in part:

"... Any annuity, benefits, fund, property, or rights created by or accruing to any person under the provisions of this act *are hereby made and declared exempt from any tax* of the State of Oklahoma or any political subdivision or taxing body thereof, ...." (Emphasis added.)

The legislature eliminated the quoted provisions of § 923 in 1989 (Okl.Sess.L.1989, Ch. 249, § 44, eff. Jan. 1, 1989).

In contrast, 68 O.S.Supp.1982 § 2358(C)(9) of the Oklahoma Income Tax Act provided:

"For all tax years beginning after December 31, 1981, taxable income and adjusted gross income shall be adjusted to arrive at Oklahoma taxable income and Oklahoma adjusted gross income as required by this section.

\* \* \* \* \* \*

C. The Oklahoma adjusted gross income of any individual taxpayers shall be further adjusted as follows to arrive at Oklahoma taxable income:

\* \* \* \* \* \*

(9) *Retirement benefits not to exceed Four Thousand Dollars ($4,000.00), which are received by an individual from the civil service of the United States, shall be exempt from taxable income."* (Emphasis added.)

The quoted provisions of 68 O.S.Supp.1982 § 2358(C)(9) were amended in 1989 (Okl.Sess.L. 1989, Ch. 249, § 39, eff. Jan. 1, 1989). The pertinent terms of 68 O.S.Supp.1989 § 2358(D)(9) are:

"9. *Retirement benefits not to exceed Five Thousand Five Hundred Dollars ($5,500.00),* which are received by an individual from the civil service of the United States, any component of the Armed Forces of the United States, the Oklahoma Public Employees Retirement System ... shall be exempt from taxable income."

The quoted language was not changed by the 1990, 1991 or 1992 amendments. .

**5.** The Income Tax Division stipulated that, prior to its amendment in 1989, the Oklahoma income tax scheme was *not legally different in any significant manner* from Michigan's tax regime which the Court declared invalid in *Davis, supra* note 1. *See* Record pages 6, 494.

**6.** Only refunds for the years 1985 through 1988 were sought. Taxes had been assessed for the years 1985–1987 when *Davis* was handed down on March 28, 1989. Claims for refund of taxes paid for the years before 1985 were conceded to be time barred under the applicable statute of limitations. *See* 68 O.S.1981 § 2373, *infra* note 64.

The administrative law judge found that Taxpayers submitted the following income tax refund claims:

Legislature provided by its 1989 amendment identical tax treatment for both state and federal retirement income.[7] The General Counsel of the Oklahoma Tax Commission [Commission] opined that *Davis* must be given purely prospective application. *On the basis of this advice the Commission's Income Tax Division denied Taxpayers' refund claims.*[8]

██ Taxpayers *timely* protested and demanded a hearing before the Commission.[9] The Income Tax Division stipulated that (a) the claims were *timely* and the amounts claimed for refunding *correct* and (b) *the final determination of the legal issues presented by these claims would govern all similarly situated taxpayers who have timely sought a refund.*[10] An administrative law judge found that the pre–1989 Oklahoma tax scheme was not in any significant way different from the taxation regime condemned in *Davis.* By applying the guidelines of *Chevron Oil Co. v. Huson,*[11] the judge concluded that *Davis* must be given *purely prospective*

*application. The Commission adopted this recommendation and denied the claims.*[12] Taxpayers appeal.[13] The dispositive issue pressed on appeal is whether we *must apply Davis retroactively.* This question, answered mid-appeal by the U.S. Supreme Court in *Harper,*[14] will be discussed in Part III. *Harper mandates that the Davis' teachings be extended to these Taxpayers.*

## II

### THE *DAVIS v. MICHIGAN DEPT. OF TREASURY*[15] PRINCIPLE OF NONDISCRIMINATION

The Court in *Davis* reviewed a Michigan statute that exempted from state taxation all benefits paid by the state to its retired employees but taxed like benefits received from other employers, including the federal government. After paying state income taxes on his federal retirement benefits for several years, Paul Davis, a retired federal government employee and Michigan resident, chal-

---

1) Mr. Strelecki's claim is for the period of January 1, 1985 through December 31, 1985 in the total amount of $1,534.00. This represents the amount of Oklahoma income tax paid on his military retirement income received in 1985.

2) Mr. and Mrs. Lankford's claims are for the periods of January 1, 1985 through December 31, 1985; January 1, 1986 through December 31, 1986; January 1, 1987 through December 31, 1987; and January 1, 1988 through December 31, 1988. The total amount sought was $8,491.00. This represents the amount of Oklahoma income tax paid on the civil service retirement income received by them during these years.

3) Mr. Worrell's claims are for the periods of January 1, 1985 through December 31, 1985; January 1, 1986 through December 31, 1986; January 1, 1987 through December 31, 1987; January 1, 1988 through December 31, 1988. During this four-year period, he paid a total of $7,229.00 in taxes on his civil service retirement income. Mr. Worrell had filed a refund claim for *voluntary* overpayments on his returns for the years 1985 through 1987; *he also paid under protest the assessment of his 1988 taxes.*

4) Mr. and Mrs. Harris' claim is for the period of January 1, 1985 through December 31, 1985 in the total amount of $977.00. This represents the amount of Oklahoma income tax paid on the military retirement income received by them during 1985.

**7.** *See* 68 O.S.Supp.1989 § 2358(D)(9), *supra* note 4.

**8.** Record at 496.

**9.** The pertinent terms of 68 O.S.1981 § 207 are:

"(a) ... the Tax Commission shall have the power to ... conduct hearings....

\* \* \* \* \* \*

(c) Any person desiring a hearing before the Tax Commission shall file an application for such hearing \* \* \* "

**10.** Record at 6, 11.

**11.** 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).

**12.** *See* Record at 529 (Oklahoma Tax Commission Order No. 91–04–25–007).

**13.** Appeals from the Oklahoma Tax Commission are governed by 68 O.S.1981 § 225; its pertinent terms are:

"(a) Any taxpayer aggrieved by any order, ruling, or finding of the Tax Commission directly affecting such taxpayer may appeal therefrom directly to the Supreme Court of Oklahoma. \* \* \* "

The quoted portions were not substantively changed by the 1989 and 1991 amendments.

**14.** *Supra* note 2.

**15.** *Davis, supra* note 1.

lenged the state tax law as infirm. He argued that the disparate treatment of state and federal retirement benefits discriminated against federal retirees in violation of a U.S. statute, 4 U.S.C. § 111.[16] The Michigan court upheld the state law. The U.S. Supreme Court struck it as invalid, holding the state tax statute violative both of § 111 and of the constitutional doctrine of intergovernmental tax immunity embodied in the Supremacy Clause of the U.S. Constitution.[17] After acknowledging the state's concession that a refund would be appropriate in the face of an adverse ruling, the Court stated that Davis would be due a refund. Its pronouncement neither discussed nor reserved for a later decision the *temporal point* of *Davis'* effectiveness.[18]

## III

## THE RETROACTIVITY ANALYSIS OF *HARPER V. VIRGINIA DEPT. OF TAXATION*[19]

The Virginia tax scheme, like that of Michigan and Oklahoma, exempted from state income taxation the retirement benefits of state and local government employees while levying an income tax on federal retirement benefits. Responding to the *Davis* command, Virginia repealed its preferential tax regime for state and local government employees. Petitioners, federal civil service and military retirees, sought a refund of taxes assessed by Virginia before the revision of its statutory scheme to meet the *Davis* criteria. The Virginia Supreme Court denied relief to the petitioners,[20] concluding that *Davis* should not be applied retroactively in the light of *Chevron*[21] and *American Trucking Assns, Inc. v. Smith*.[22] On certiorari, the U.S. Supreme Court ordered the Virginia Supreme Court to re-examine the petitioners' claim in keeping with its then recent pronouncement in *Beam*.[23] *Beam* requires that a new federal rule have a retroactive application to claims arising from facts predating its decisional promulgation.[24] The Virginia court reaffirmed its own previous decision,[25] holding that *Beam* did not foreclose the continued use of the three-part *Chevron*[26] test

16. *Davis, supra* note 1, 489 U.S. at 806–807, 109 S.Ct. at 1503. The terms of 4 U.S.C. § 111 are: "The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States ... by a duly constituted taxing authority having jurisdiction, if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation."

17. *Davis, supra* note 1, 489 U.S. at 817, 109 S.Ct. at 1507. *See* the Supremacy Clause, Art. 6, cl. 2, U.S. Const.

18. *Davis, supra* note 1, 489 U.S. at 817, 109 S.Ct. at 1508–09. For a recent decision that followed the teachings of *Davis*, see *Barker v. Kansas*, 503 U.S. ——, 112 S.Ct. 1619, 118 L.Ed.2d 243 (1992). *Barker* holds that a state violates intergovernmental tax immunity and 4 U.S.C. § 111 when it taxes the benefits received from the United States by military retirees but does not tax the benefits received by retired state and local government employees.

19. *Harper, supra* note 2.

20. 241 Va. 232, 401 S.E.2d 868 (1991) [*Harper I*].

21. *Chevron, supra* note 11.

22. 496 U.S. 167, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990) (a plurality opinion). *See* discussion in note 38, *infra*.

23. *Beam, supra* note 3.

24. *Harper v. Virginia Dept. of Taxation*, 501 U.S. ——, 111 S.Ct. 2883, 115 L.Ed.2d 1049 (1991).

25. 242 Va. 322, 410 S.E.2d 629 (1991) [*Harper II*].

26. In *Chevron, supra* note 11, the Court isolated three factors for ascertaining *when retroactivity of a new pronouncement could be restricted:* (1) at the threshold, the decision must establish a new principle of law, whether by overruling clear past precedent on which litigants may have relied, or on an issue of first impression whose decision is not clearly foreshadowed; (2) the court must weigh the merits and demerits of applying the rule retroactively by considering the rule's prior history, its purpose and effect, and whether retroactivity will further or retard its operation; (3) the court must consider the inequity flowing from retroactive application, including unfairness and hardship to the parties. *Id.*, 404 U.S. at 106–107, 92 S.Ct. at 355.

This court has adopted and applied the *Chevron* test. *See Private Truck Council v. Tax Com'n, Okl.*, 806 P.2d 598, 608–610 (1991); *First of McAlester Corp. v. Okl. Tax Com'n, Okl.*, 709 P.2d 1026, 1034–1036 (1985); *Griggs v. State ex rel. Okl. Dept. of Transp., Okl.* 702 P.2d 1017, 1020–1021 (1985).

because *Davis did not expressly decide* whether its rule applied retroactively.

The U.S. Supreme Court granted certiorari a second time, reversing the Virginia judgment and giving retroactive effect to the nondiscrimination principle of *Davis*.[27] The Court followed the retroactivity analysis in *Beam: a new rule of federal law announced by the U.S. Supreme Court and applied to the parties before it in a civil action must be given full retroactive effect in all cases still open on direct review and as to all events that are not time-barred (capable of being litigated), regardless of whether they predate or postdate the announcement of the rule* (the so-called "pipeline rule").[28] This rule "extend[ed] *Griffith's* ban against 'selective application of new rules' " to criminal cases.[29]

### The General Rule of Retroactivity— Its Birth, Erosion and Revival

The Court notes in *Harper* that both the common law and its own jurisprudence have long recognized a general rule of retroactivity for its constitutional decisions.[30] This principle was eroded in *Linkletter v. Walker*[31] where the Court developed a three-part test under which it could confine a new rule of *criminal law* to prospective application.[32] In the civil context, *Chevron* similarly permitted the withholding of retroactive effect to a new principle of law.[33] *Linkletter* was overruled in *Griffith v. Kentucky*[34] where the Court eliminated all limits on retroactivity of a new criminal-law rule. *Griffith's* teachings rest on (1) "basic norms of constitutional adjudication"—i.e., a selective application of new rules violates the principle of treating similarly situated parties the same—and (2) "the nature of judicial review," which strips the Court of the legislative prerogative to make rules of law retroactive or prospective as it sees fit.[35]

*Griffith* dicta—that "civil retroactivity ... continues to be governed by the standard announced in *Chevron*"[36]—left the issue unsettled for civil cases. The Court confronted in *Smith*[37] the meaning of its *Griffith* dicta. *Smith* was a plurality opinion in which the Court considered whether to confine the application of a civil-law rule announced in an earlier case to events which predate that decision.[38] While in *Smith* the Court was

**27.** 504 U.S. ——, 112 S.Ct. 1934, 118 L.Ed.2d 541 (1992), limiting the issues on certiorari, 504 U.S. ——, 112 S.Ct. 2298, 119 L.Ed.2d 222 (1992).

**28.** *Harper, supra* note 2, 509 U.S. at ——, 113 S.Ct. at 2517. For a discussion of the so-called "pipeline doctrine," see *infra* notes 44 and 47.

**29.** *Harper, supra* note 2, 509 U.S. at ——, 113 S.Ct. at 2517 (quoting from *Griffith v. Kentucky*, 479 U.S. 314, 323, 107 S.Ct. 708, 713, 93 L.Ed.2d 649 (1987).

**30.** *Harper, supra* note 2, 509 U.S. at ——, 113 S.Ct. at 2516 (citing *Robinson v. Neil*, 409 U.S. 505, 507, 93 S.Ct. 876, 877, 35 L.Ed.2d 29 (1973), and *Kuhn v. Fairmont Coal Co.*, 215 U.S. 349, 372, 30 S.Ct. 140, 148, 54 L.Ed. 228 (1910) (Holmes, J., dissenting).

**31.** 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

**32.** *Linkletter, supra* note 31, teaches that a decision to confine a new rule to prospective application may be rested on the purpose of the new rule, the reliance placed upon the previous view of the law, and the effect on the administration of justice of a retrospective application of the new rule. *Id.*, 381 U.S. at 636, 85 S.Ct. at 1741.

**33.** *Chevron, supra* note 11; *see* discussion of the three-part test, *supra* note 26.

**34.** *Supra* note 29.

**35.** *Harper, supra* note 2, 509 U.S. at ——, 113 S.Ct. at 2516 (quoting from *Griffith, supra* note 29, 479 U.S. at 323, 107 S.Ct. at 713; *see also Teague v. Lane*, 489 U.S. 288, 317, 109 S.Ct. 1060, 1079, 103 L.Ed.2d 334 (1989) (White, J., concurring in part and concurring in judgment).

**36.** *Griffith, supra* note 29, 479 U.S. at 321 n. 8, 107 S.Ct. at 712 n. 8.

**37.** *Smith, supra* note 22.

**38.** The *Smith* plurality opinion used the *Chevron* test to consider whether to confine the application of *American Trucking Assns. v. Scheiner*, 483 U.S. 266, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987), to taxation of highway use prior to June 23, 1987, the date the Court decided *Scheiner*. Opinion of O'Connor, J., joined by Rehnquist, C.J., and White and Kennedy, JJ. Four other justices rejected the plurality's anomalous approach to retroactivity (Stevens, J., dissenting, joined by Brennan, Marshall, and Blackmun, JJ.). Justice Scalia concurred in the judgment, although he "share[d]" the dissent's "perception that prospective decisionmaking is incompatible

split, its later opinion in *Beam adopted a principle requiring retroactive application of a new civil-law (noncriminal) rule that was applied to the parties in the case in which it was announced.*

### Beam's Implied Retroactivity Analysis [39]

*Harper, which governs us here, gave controlling effect to Beam's retroactivity jurisprudence.* The issue in *Beam* was whether the new constitutional rule announced in *Bacchus Imports, Ltd. v. Dias* [40] should apply retroactively. *Bacchus* had held a Hawaiian statute violative of the Commerce Clause.[41] The offending state enactment imposed a higher excise tax on imported alcoholic products than on those produced within the state. *Bacchus* applied the new rule to the parties before it, *but was silent* as to the opinion's backward or forward reach. Following *Bacchus,* the James B. Beam Distill-

ing Company sought a refund of taxes imposed on alcoholic beverages by a Georgia statute similar to that condemned in *Bacchus.* The state court struck the Georgia law, but after using a *Chevron* analysis, refused to give *Bacchus* the sought-for retroactive effect.[42] On certiorari, the U.S. Supreme Court's *plurality* reversed the Georgia judgment, declaring that the state court had erred in refusing to give retroactivity to a previously announced federal-law rule which had been applied to the litigants in the prior case.[43] *Beam, whose retroactivity teaching garnered six votes,* holds that *retroactivity is the general rule of constitutional jurisprudence.*[44] In the aftermath of *Beam* and until *Harper* was pronounced, state courts were divided on whether retroactivity may be implied when the U.S. Supreme Court's decision has not squarely addressed the issue.[45]

with the judicial role." *Smith, supra* note 22, 496 U.S. at 200, 110 S.Ct. at 2343.

39. *Beam, supra* note 3.

40. 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984).

41. *Bacchus, supra* note 40, 468 U.S. at 273, 104 S.Ct. at 3056. The terms of the Commerce Clause, Art. 1, § 8, cl. 3, U.S. Const., are: "Congress shall have the power to regulate commerce with foreign Nations, and among the several States, and with the Indian Tribes."

42. *Beam, supra* note 3, 501 U.S. at ——, 111 S.Ct. at 2442.

43. *Beam, supra* note 3, 501 U.S. at ——, 111 S.Ct. at 2446.

44. *Beam, supra* note 3, 501 U.S. at ——, 111 S.Ct. at 2445. *Beam* was doubtless aimed at assuaging criticism leveled at the Court by academic lawyers for its pre-*Beam* brand of prospectivity that was causing a serious disparate impact on similarly situated individuals. *See* De-Long, Confusion In Federal Courts: Application Of The *Chevron* Test In Retroactive–Prospective Decisions, 1985 Univ. of Ill.L.Rev. 117, 125–132; Beytagh, Ten Years Of Non–Retroactivity: A Critique And A Proposal, 61 Vir.L.Rev. 1557, 1596, 1602, 1612–13, 1616 (1975); Fairchild, Limitation Of New Judge–Made Law To Prospective Effect Only: "Prospective Overruling" or "Sunbursting", 51 Mar.L.Rev. 254, 267 (1967–1968); Keeton, Creative Continuity In The Law Of Torts, 75 Har.L.Rev. 463, 491 (1962); Currier, Time And Change In Judge–Made Law: Prospective

Overruling, 51 Vir.L.Rev. 201, 247–248 (1965); C. AUERBACH, L. GARRISON, W. HURST & S. MERMIN, THE LEGAL PROCESS 174 (1961). Some of these commentators charged that the nonretroactivity approach has produced gross inequality of treatment for similarly situated persons then in the benefits "pipeline" by excluding them from the benefits of a new rule of constitutional law. The *"pipeline doctrine"* refers to those *interests presently in litigation* (i.e., the case before the court and cases pending before the trial tribunals or in the appellate litigation process) *or capable of being litigated* when the new rule is announced. For references to the pipeline doctrine see *Michigan v. Payne,* 412 U.S. 47, 60, 93 S.Ct. 1966, 1973, 36 L.Ed.2d 736 (1973) (Douglas, J., dissenting); Hawkins, Florida Constitutional Law: A Ten–Year Retrospective On The State Bill of Rights, 14 Nova L.Rev. 693, 750 (1990); Fallon, New Law, Non–Retroactivity, and Constitutional Remedies, 104 Har.L.Rev. 1731, 1815 (1991). For Oklahoma jurisprudence applying a new rule of law to cases in the *pipeline* see *Amoco Production v. Corp. Com'n of Okl.,* Okl.App., 751 P.2d 203, 208 (1986); *Schepp v. Hess, Okl.,* 770 P.2d 34, 39 (1989); *Dow Jones & Co. v. State ex rel. Tax Com'n, Okl.,* 787 P.2d 843, 847 (1990). *Beam is the ultimate refinement of the pipeline doctrine aimed at securing equality for all claims pending or those capable of being litigated when the new rule is announced.*

45. For state and federal decisions that have applied *Beam's* implied retroactivity analysis in concluding that retroactive sweep should be given to a new rule of federal law in every case in which the Court's opinion was silent on its backward or forward reach, see *Cambridge State Bank v. James,* 480 N.W.2d 647 (Minn.1992); *Fonger v.*

*Harper* concludes that when the "Court does not 'reserve the question whether its holding should be applied to the parties before it,' ... an opinion announcing a rule of federal law 'is properly understood to have followed the normal rule of retroactive application' and must be 'read to hold ... that its rule should apply retroactively to the litigants then before the Court.'"[46] Moreover, "the legal imperative 'to apply a rule of federal law retroactively after the case announcing the rule has already done so' must 'prevai[l] over any claim based on a *Chevron Oil* analysis.'"[47]

*Department of Treasury*, 193 Mich.App. 71, 483 N.W.2d 920 (1992), leave to appeal denied, 440 Mich. 888, 487 N.W.2d 472 (1992); *Sizemore v. Rinehart* (an unpublished opinion by the Alabama Court of Civil Appeals, 611 So.2d 1064 (1992)); *Murray v. Anthony J. Berttucci Construction Co., Inc.*, 958 F.2d 127 (5th Cir.1992), cert. denied, —— U.S. ——, 113 S.Ct. 190, 121 L.Ed.2d 134 (1992); *Sterling v. Block*, 953 F.2d 198 (5th Cir.1992).

For state court cases that depart from *Beam's* implied retroactivity analysis, see *Swanson v. State*, 329 N.C. 576, 407 S.E.2d 791 aff'd on rehearing, 330 N.C. 390, 410 S.E.2d 490 (1991); *Harper II, supra* note 25; *Bass v. State*, 302 S.C. 250, 395 S.E.2d 171 (1990) [*Bass I*], cert. granted and judgment vacated, 501 U.S. ——, 111 S.Ct. 2881, 115 L.Ed.2d 1047 (1991), reaff'd on remand, 307 S.C. 113, 414 S.E.2d 110 (1992) [*Bass II*].

**46.** *Harper, supra* note 2, 509 U.S. at ——, 113 S.Ct. at 2518 (quoting from *Beam, supra* note 3, 501 U.S. at ——, 111 S.Ct. at 2445) (emphasis added).

**47.** *Harper, supra* note 2, 509 U.S. at ——, 113 S.Ct. at 2518 (quoting from *Beam, supra* note 3, 501 U.S. at ——, 111 S.Ct. at 2446.

*The pipeline doctrine, supra* note 44, *is not appropriate for application to cases where the new rule is announced on review of a collateral attack upon an earlier judgment.* Oklahoma's retrospectivity jurisprudence makes a distinction between "direct review" (direct appeal or direct attack) on the one hand and "collateral review" (collateral attack) on the other. *See Harry R. Carlile Trust v. Cotton Petroleum, Okl.*, 732 P.2d 438, 447–448 nn. 46, 49 (1987), which gives purely prospective sweep to a new constitutional rule declared in a *collateral attack* upon a Corporation Commission spacing order. Among the reasons *Cotton Petroleum* advances for not applying the pipeline doctrine to collateral challenges are (1) society's interest in *finality* of decisions, (2) the need to conserve judicial time and expense, and (3) evidence and records in old cases may deteriorate, fade away, or vanish. *Id.* at 447 n. 46, 448 (citing support in federal jurisprudence). *See* in this connection, Mishkin, *The Supreme Court 1964 Term Foreword: The High Court, The Great Writ, And The Due Process Of Time And Law*, 79 Har.L.Rev. 56, 77–79 (1965); Corr, *Retroactivity: A Study In Supreme Court Doctrine "As Applied"*, 61 N.C.L.Rev. 745, 750–752 (1983); *but cf.*

Schwartz, *Retroactivity, Reliability, and Due Process: A Reply to Professor Mishkin*, 33 U.Chi. L.Rev. 719, 730–734 (1966); *Cotton Petroleum, supra* at 449–450 (Kauger, J., dissenting in part). The *pipeline doctrine* was fashioned for a new rule's application in a *direct appeal.* This is evident from the writings of those who supported the pipeline in *Harper* and *Beam.* I. **HARPER:** The *Harper* retroactivity rule applies "in all cases still open on direct review." *Harper, supra* note 2, 509 U.S. at ——, 113 S.Ct. at 2517. Justice Scalia's concurring opinion notes that in *Teague, supra* note 35, the plurality "openly rejected settled precedent controlling the scope of retroactivity on collateral review." In his view "abandonment of [the Court's] prior collateral-review retroactivity rule was fully in accord with the doctrine of *stare decisis.*" (*Harper, supra* note 2, 509 U.S. at ——, 113 S.Ct. at 2520 (Scalia, J., concurring)). II. **BEAM:** A six-justice majority concludes in *Beam* that litigants in the pipeline may *on direct review* receive the benefit of a new constitutional rule of civil law. (a) Justice Souter stresses that "retroactivity in civil cases *must be limited by the need for finality ....*" He opines that "'*[p]ublic policy dictates that there be an end to litigation;* that those who have contested an issue shall be bound by the result of that contest, and that *matters once tried shall be considered forever settled as between the parties.'"* *Beam, supra* note 3, 501 U.S. at ——, 111 S.Ct. at 2446–2447 (citations omitted) (emphasis added). (b) Justice Blackmun states that "failure to apply a newly declared constitutional rule to cases pending on direct review *violates basic norms of constitutional adjudication.*" *Id.*, 501 U.S. at ——, 111 S.Ct. at 2449 (Blackmun, J., concurring in judgment). (c) Justice White comments that the new rule "is to be applied to other litigants whose cases were *not final* at the time of the *Bacchus* decision." *Id.*, 501 U.S. at ——, 111 S.Ct. at 2448 (White, J., concurring in judgment) (emphasis added). *Application of the pipeline doctrine is appropriate in the instant case because the Taxpayers seek the benefit of a new rule on direct review of the Tax Commission's denial of their refund claims.*

In *Teague, supra* note 35, 489 U.S. at 311, 109 S.Ct. at 1074, Justice O'Connor, writing for a plurality, states:

"[I]t has long been established that a final civil judgment entered under a given rule of law may withstand subsequent judicial change in that rule. In *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940), the Court held that a judgment

**IV**

## OKLAHOMA'S PRE–1989 TAX SCHEME

Our task here is to examine the pre–1989 statutory tax scheme in contest below.[48] The Commission, *qua* administrative agency, is powerless to strike down a statute for constitutional repugnancy. Within the framework of Oklahoma's tripartite distribution of government powers, the authority to invalidate a constitutionally infirm enactment resides solely in the judicial department.[49] Every statute is hence *presumed* constitutionally valid until a court of competent jurisdiction has declared otherwise. The Income Tax Division stipulated below, and the Commission found, that no significant legal distinction exists between Oklahoma's income tax scheme in effect for the tax years 1985 through 1988 and the condemned Michigan tax-law regime invalidated in *Davis. The plain teachings of Davis and Harper command us today to hold the pre–1989 income tax framework invalid insofar as it discriminated against federal retirees' income and, in conformity to the strictures of Harper, give retroactive effect to Davis.*

based on a jurisdictional statute later found to be unconstitutional could have *res judicata* effect. The Court based its decision in large part on finality concerns. 'The actual existence of a statute, prior to such a determination [of unconstitutionality], is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration ... Questions of ... prior determinations deemed to have finality and acted upon accordingly ... demand examination.' *Id.,* 308 U.S. at 374, 60 S.Ct. at 318–319. *Accord, Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923) ('Unless and until ... reversed or modified' on appeal, an erroneous constitutional decision is 'an effective and conclusive adjudication'); *Thompson v. Tolmie,* 2 Pet. 157, 169, 7 L.Ed. 381 (1829) (errors or mistakes of court with competent jurisdiction 'cannot be corrected or examined when brought up collaterally' )." (Emphasis added.)

48. For the pre–1989 statutory scheme see 74 O.S.1981 § 923 and 68 O.S.Supp.1982 § 2358(C)(9), *supra* note 4.

**V**

## THE TAXPAYERS' REFUND REMEDY
### A.

### *Refund Claims For Pre–Davis and Post–Davis Overpayments*

■ The Commission asserts that *two kinds of taxpayer claims* are involved in this case and the law applicable to each is different. The *first* category is taxpayer *Worrell's refund claim for a post-Davis overpayment* made under protest of additional taxes proposed to be assessed on his 1988 return. Because Worrell availed himself of the statutory protest procedure to his protest *Davis* is acknowledged to apply retroactively.[50] This much *only* the Commission is willing to concede in its post-*Harper* advocacy. For the *other* category of claims—i.e., *refund claims for pre-Davis voluntary overpayment of taxes without protest* —the Commission argues that a refund is neither required by federal due process strictures nor available under Oklahoma law. In essence, the Commission's post-*Harper* position is that all pre-*Davis* overpayments are *nonrefundable* unless made under protest. For the reasons stated in Part V(D) and (E), we reject this argument as contrary to *Harper* [51] *and to the notions of due process in Art. 2, § 7, Okl. Const.*[52]

49. *Dow Jones, supra* note 44 at 845; State ex rel. York v. Turpen, Okl., 681 P.2d 763, 767 (1984).

Art. 7, § 1, Okl. Const., confers on administrative agencies only that quantum of "judicial power" which is necessary to support their exercise of adjudicative authority in individual proceedings brought before them. The power assigned to boards and commissions is not coextensive with that which is vested in the courts. *Dow Jones, supra* note 44 at 845.

50. In his post-*Davis* 1988 return Worrell claimed an exemption from state taxes on his federal retirement income. When the exemption was denied, Worrell filed a protest with the Commission and paid the proposed amount. He had *voluntarily paid without protest* state taxes on his civil service retirement income in his 1985, 1986 and 1987 returns and seeks a refund of his pre-*Davis* voluntary overpayments.

51. *Harper, supra* note 2. *See* discussion of due process in Part V(E), *infra.*

52. The terms of Art. 2, § 7, Okl. Const., are:

## B.

### The Commission May Not Be Relieved Of Its Pre–Harper Procedural Posture

After *Harper* declared *Davis* retroactive, Taxpayers sought "summary reversal" of the Commission's denial of their refund claims. This court directed the parties to show cause why in disposing of this case we should not hold the Commission bound by the unequivocal terms of its pre-*Harper* stipulations below.[53]

The Commission responded that its stipulations were merely "for pre-hearing housekeeping purposes". According to the Commission, a refund of taxes is neither mandated by the teachings of *Harper* nor required by state law when the tax was *voluntarily paid* without protest under a statute later declared unconstitutional. Taxpayers characterize the Commission's post-*Harper* argument as "new-found" and a "last gasp effort at the eleventh hour".

Our review of the record indicates that the Commission's pre-*Harper* and post-*Harper* positions *on two critical issues* are vastly different and materially inconsistent. First, the Income Tax Division asserted in its pre-hearing "position memorandum" filed below that the issue is whether *Davis* is to "apply retroactively *to require the Oklahoma Tax Commission to refund or exclude taxes* paid on federal retirement income for [the tax] years 1984, 1985, 1986, 1987 and 1988." [54] Its post-hearing brief similarly states that the "*taxpayers will be entitled to a refund or abatement of the taxes in question, if, and only if, the decision in Davis is to have retroactive effect.*" [55] The Commission's pre-*Harper* answer brief on appeal unequivocally articulates the same proposition.[56]

The second inconsistency is found in materials attached to the Income Tax Division's pre-hearing brief filed below in support of its objection to taxpayer Worrell's quest for suspension of Commission proceedings until the termination of his district court action for refund. These materials included a motion to dismiss and a brief the Commission had filed in Worrell's district court case.[57] In its district court brief the Commission had argued that the Uniform Tax Procedure

"No person shall be deprived of life, liberty, or property, without due process of law."

**53.** *The Income Tax Division's stipulations before the Commission are:*

"[T]he Division is prepared to stipulate for the record that the refund claims that are at issue in these proceedings are currently for the years 1981 through 1988, although I understand that counsel for Mr. and Mrs. Lankford will have an announcement as to some of those years." [Record 5]

"We're also prepared to stipulate that only the Plaintiffs involved in these proceedings for the years in question were recipients of the retirement income benefits from the United States Government either as civil service or as military retirees." [Record 5]

"We further stipulate that the claims for the years in question subject to, we expect an announcement as to the years 1981 through 1984 [the Lankfords withdrew their claims for the years 1981–1984, [Record 7–8], we'd stipulate that those claims were timely filed. We further stipulate that the claims were denied by the Income Tax Division and that the denials were all timely protested." [Record 5–6]

"I stand corrected. Further, the amounts claim[ed] as reflected, I believe, in the Court's file, we stipulate as to the dollar amount if the Taxpayers are entitled to a refund in this case, the subject that's at issue, but the amounts claimed, we stipulate as being correct with the exception of Mr. Worrell and the exception is only as to what may appear in the Court's file because it has been changed since the original filing. We have ... come to an agreement.... Mr Worrell's claim for when he filed is $790.00, for 1986 is $1869.00, for 1987 is $2165.00 and for 1988 is $2405.00 for a total of $7229.00. There is no contention between the Division and Taxpayers as to the correctness of the amounts if refunds are to be made." [Record 6]

**54.** Record at 392 (emphasis added).

**55.** Record at 479 (emphasis added).

**56.** *The Commission's answer brief on appeal states that the question presented is whether Davis "is to be applied retroactively, so as to require refund or abatement of taxes paid or assessed for the tax years 1985 through 1988, or prospectively only from the date of that decision."* Answer brief at 3.

**57.** Admissions against a party's interest made in a brief may be used to *supplement* the appellate record. *Hulsey v. Mid–America Preferred Ins. Co.*, Okl., 777 P.2d 932, 937 n. 17 (1989); *Kwikset/Emhart v. Mayberry*, Okl., 800 P.2d 239, 240 n. 1 (1990); *Reeves v. Agee*, Okl., 769 P.2d 745,

Code[58] provides the exclusive "remedies and procedures for taxpayers to challenge allegedly illegal or unconstitutional taxes, and for the recovery or refund of such taxes already paid."[59] The brief informed the district court that *three statutory remedies* are available. When the Commission proposes to assess additional or delinquent taxes against a taxpayer and the taxpayer complains that the tax is *illegal,* the taxpayer can either (1) protest the assessment and receive a full hearing[60] (2) or pay the tax under protest and give notice of his intent to file suit in the district court.[61] But where *"a taxpayer has voluntarily reported and paid his taxes without protest, and the tax is subsequently found to be illegal or unconstitutional, the taxpayer has a different remedy. The taxpayer must file a claim for refund with the Tax Commission, and he is precluded from resorting to the courts until a final Commission order is entered on his claim."*[62] In support of this last remedy the Commission's brief cited and relied upon two Oklahoma decisions[63] and the provisions of 68 O.S.1981 § 2373.[64] *This statement materially differs from the assertions in the Commission's*

*post-Harper supplemental appellate brief.* In the latter document counsel represents that Oklahoma's statutory scheme provides *only two* statutory remedies for a refund of taxes paid under an unconstitutional taxing scheme. Implicit in this post-*Harper* argument is the notion that state law leaves the Commission without authority to refund *voluntary* overpayments (tax paid without protest) of income tax.

A party on appeal cannot take a position inconsistent with that maintained before a trial tribunal.[65] While this court may decide a public-law case on dispositive issues,[66] it will not relieve a party of a solemn commitment to a position argued both below and on appeal unless it is so contrary to the applicable law that it would amount to an *ultra vires* act.[67] We hence hold that the Commission is bound *in this case* (1) by the Income Tax Division's pre-*Harper* position, below and on appeal, that Taxpayers are entitled to a refund of overpayment *if Davis is retroactive,* and (2) by its procedural posture below that the statutory scheme does allow Taxpayers

54 (1989); *Womack v. City of Oklahoma City,* Okl., 726 P.2d 1178, 1181 n. 8 (1986).

**58.** 68 O.S.1981 §§ 201 et seq.

**59.** Record at 411 (Commission's brief in support of its motion to dismiss the district court case).

**60.** 68 O.S.1981 §§ 207, 221.

**61.** 68 O.S.Supp.1989 § 226.

**62.** Record at 412 (emphasis added).

**63.** *Sowders v. Oklahoma Tax Commission,* Okl., 527 P.2d 852 (1974); *Sun Oil Co. v. Oklahoma Tax Commission,* Okl., 620 P.2d 896 (1981).

**64.** The terms of 68 O.S.1981 § 2373 provided: "If, upon any revision or adjustment ... any refund is found to be due any taxpayer, it shall be paid ... out of the "Income Tax Adjustment Fund", created by Section 2352 of this title, . . . .
Except as provided in Section 2375(G) of this title, the amount of the refund shall not exceed the portion of the tax paid during the three (3) years immediately preceding the filing of the claim, or, if no claim was filed, then during the three (3) years immediately preceding the allowance of the refund; . . . ."
The quoted language was not substantially changed by the 1985 and 1991 amendments.

**65.** Neither party on appeal will be allowed to change the theory of the case from that on which it was presented to the trial court. *Agricultural Insurance Company v. Kouba,* Okl., 294 P.2d 583, 586 (1956). Parties are bound in the appellate court by the theories on which a case was tried below. *Chrysler Corporation v. Walter E. Allen, Inc.,* Okl., 375 P.2d 878, 883 (1962); *Griswold v. Public Service Co. of Oklahoma,* 205 Okl. 412, 238 P.2d 322, 326 (1951).

**66.** In a public-law controversy, this court is *generally* free to change the theory presented by the parties below and followed by the trial court. In the *Matter of McNeely,* Okl., 734 P.2d 1294, 1296 (1987); *Burdick v. Independent School Dist.,* Okl., 702 P.2d 48, 54 (1985); *Davis v. Davis,* Okl., 708 P.2d 1102, 1104 n. 2 (1985); *McCracken v. City of Lawton,* Okl., 648 P.2d 18, 21 (1982); *Application of Goodwin,* Okl., 597 P.2d 762, 764 (1979).

**67.** The words *"ultra vires"* mean "beyond the power". *State v. Benevolent Investment & Relief Ass'n,* 107 Okl. 228, 232 P. 35, 38 (1925). "An act is said to be ultra vires when it is not within the scope of the powers ... to perform it under any circumstances or for any purpose." *Field v. City of Shawnee,* 7 Okl. 73, 54 P. 318, 319 (1898). An *ultra vires* act is one which is beyond the powers conferred by law. BLACK'S LAW DICTIONARY at 1365 (5th Ed.1979), citing *Charles v. Town of Jeanerette, Inc.,* 234 So.2d 794, 798 (La.App.1970).

to seek a *timely refund* of taxes voluntarily paid under a clearly unconstitutional statute. The Commission now attempts to relitigate the remedial correctness of the refund claims on inconsistent theories. It has lulled *these* Taxpayers into a false sense of security by inducing their belief that the voluntary overpayments claimed to be due would be refunded if *Harper* gave retroactive effect to *Davis*. *The Commission will not be heard*—at this late hour—to deny liability upon a *changed* interpretation of the state's remedial regime for refunds. The government stands before us on the footing of an *ordinary appellee*. It will not receive a more favorable treatment than that afforded other appellate litigants in a similar situation.

Even if we assumed that legislative silence on refundability of voluntary income tax overpayments operates as a bar to the Commission's consideration of such claims (and hence points to its lack of authority to maintain the pre-*Harper* position), the refund bar the Commission urges against claims of pre-*Davis* voluntary overpayment would be constitutionally infirm.

## C.

### *The Commission's Construction Would Nullify or Render Meaningless an Overpaying Taxpayer's Statutory Opportunity to Amend an Income Tax Return*

Assuming for argument's sake the Commission is correct that a person voluntarily overpaying income tax may not seek a refund, its position would be inconsistent with a taxpayer's § 2375 statutory opportunity to amend *upward* or *downward* an incorrect income tax return.[68] Under the Commission's construction of the remedial regime for refundability, a downward amendment would be but a vain exercise because only an upward amendment could become effective. Amended returns, if they were to show overpayment, would be for naught, but the government could collect if any amendment were to reflect underpayment. This interpretation would give § 2373 an absurd meaning. A taxpayer *could* amend a return, but unless the self-assessed tax due had been underpaid, he could never benefit from the corrected return. It would be indeed absurd for us to hold that, though a taxpayer may *amend a return, he/she can never recapture* any overpayment, no matter how timely the refund was sought.

It is a well-settled principle of statutory construction that, where possible, courts will not allow statutes to have absurd or discriminatory consequences. Construction that would lead to an absurdity or to discriminatory treatment will be avoided if this can be done without violating legislative intent.[69] In order to give § 2373 its intended effect, we must adopt the meaning that would uphold its constitutionality.[70] In this resolve we are also supported by the law's command that tax statutes be strictly construed against the state.[71] Any doubt as to their possible meaning must be resolved in favor of the taxpayer.[72]

---

**68.** The terms of 68 O.S.1981 § 2375(G) provided in pertinent part:
" * * * If the amount of the net income for any year of the taxpayer under this law, and as returned to the United States Treasury Department, is changed or corrected by the Internal Revenue Service, such taxpayer, within one (1) year after final determination of the corrected net income, shall file an *amended return reporting the corrected net income,* or notify the Tax Commission by letter that the information is available, and the *Tax Commission shall make assessment or refund* based thereon...." (Emphasis added.)
The quoted italicized language was not substantively changed by the 1986, 1989 and 1992 amendments.

**69.** The legislature will not be presumed to have intended a *vain or absurd* result. *Ledbetter v.*

*Alcoholic Bev. Laws Enforcement,* Okl., 764 P.2d 172, 179 (1988); *LeFlore v. Reflections of Tulsa, Inc.,* Okl., 708 P.2d 1068, 1075 (1985); *Johnson v. Johnson,* Okl., 674 P.2d 539, 542 (1983); *Farris v. Cannon,* Okl., 649 P.2d 529, 531 n. 4 (1982); *Texas Cty. Irrigation v. Cities Serv. Oil Co.,* Okl., 570 P.2d 49, 51 (1977).

**70.** For discussion of state and federal constitutional issues, see Part V(D) and (E).

**71.** *Neumann v. Tax Com'n,* Okl., 596 P.2d 530, 532 (1979); *Wilson v. State ex rel. Okl. Tax Com'n,* Okl., 594 P.2d 1210, 1212 (1979).

**72.** *C.H. Leavell & Company v. Oklahoma Tax Commission,* Okl., 450 P.2d 211, 215 (1968).

## D.

### *The Statutory Construction of Oklahoma's Remedial Regime For Tax Refunds, which the Commission Urges For Our Adoption, Would Make The Regime Vulnerable To a Due Process Attack*

The Commission's post-*Harper* briefs argue *for the first time on appeal* that Taxpayers *did not invoke the several remedies that were available.* The uninvoked remedies, which we are told meet the *Harper* federal due process requirements, are (a) two statutory remedies (not three as asserted in the district court) [73] which may be pursued when the Commission proposes to assess an illegal or unconstitutional tax, (b) in cases where no assessment has been proposed, no Commission order issued, and no taxes are due, a declaratory action would lie to challenge the constitutionality of a tax to which a taxpayer is subject,[74] and (c) a prerogative writ could be sought to enjoin the collection of taxes determined to be unconstitutional.[75]

The Commission *asserts* that *nothing* in the applicable income tax refund statute, § 2373,[76] provides guidance to identifying the specific grounds on which a refund may be due. *In the face of legislative silence, the Commission concludes that it is not unreasonable to assume the state has not provided for any relief beyond that necessarily imposed by federal due process.* By drawing an analogy to the general statute, 68 O.S.1981 § 227, which provides for refunding of taxes *"erroneously paid through error of fact, or*

computation, or misinterpretation of law,"* [77] the Commission concludes that there is no authority for refunding voluntary income tax overpayments made before Davis.*

We cannot accede to the Commission's § 2373 analysis—that under our system of self-assessment for income tax liability, taxpayers who voluntarily overpay on the assumption that no exemption applies do so at their own peril. In our view, § 2373 *does not bar* refund to taxpayers who voluntarily overpaid *under presumptively valid statutes* and then timely made refund claims *after* a judicial pronouncement of the statute's infirmity. To hold otherwise would violate the anti-discrimination component of our state constitution's due process clause.[78] *The construction pressed upon us would make a pre-Davis voluntary overpayment perpetually irremediable.* Where there are two possible interpretations of a statute, only one of which would render the enactment unconstitutional, the court should follow that which upholds the validity of legislative law.[79] The fundamental law's command would indeed be violated if we were to construe § 2373's silence as erecting an insuperable bar to refundability of *voluntary* overpayments. We hence adopt today that construction which ensures the refund regime's constitutionality.

## E.

### *The Due Process Teachings of Harper*

In *Harper* the Court observes that the constitutional sufficiency of any refund reme-

---

73. *See* Part V(B), *supra*.

74. *Oklahoma Tax Commission v. Smith*, Okl., 610 P.2d 794 (1980).

75. *Phillips v. Oklahoma Tax Com'n*, Okl., 577 P.2d 1278 (1978).

76. For the pertinent terms of 68 O.S.1981 § 2373, see *supra* note 64.

77. Emphasis added.

78. For the terms of Art. 2, § 7, Okl. Const., see *supra* note 52. Our due process clause, which has a definitional sweep co-extensive with its federal counterpart, contains an *anti-discrimination* component. *Ross v. Peters*, Okl., 846 P.2d 1107, 1114 n. 29 (1993); *Messenger v. Messenger*,

Okl., 827 P.2d 865, 872 (1992); *Fair Sch. Finance Coun. of Okla. v. State*, Okl., 746 P.2d 1135, 1148 n. 48 (1987); *Matter of Rich*, Okl., 604 P.2d 1248, 1250–1251 (1979); *McKeever Drilling Co. v. Egbert*, 170 Okl. 259, 40 P.2d 32, 35 (1935). See *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct.1983, 1994, 32 L.Ed.2d 556 (1972), citing *Baldwin v. Hale*, 68 U.S. 223, 17 L.Ed. 531 (1864) and *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

79. *State v. Okl. State Bd. for Property*, Okl., 731 P.2d 394, 398–99 (1987) (the reviewing court is bound to accept an interpretation that avoids constitutional doubt); *see also, Gilbert Cent. Corp. v. State*, Okl., 716 P.2d 654, 658 (1986); *Ricks Exploration v. Okl. Water Resources Bd.*, Okl., 695 P.2d 498, 504 (1985); *Oklahoma State Election Bd. v. Coats*, Okl., 610 P.2d 776, 780 (1980); *Neumann, supra* note 71 at 532.

dy initially turns on whether state law provides an adequate form of " 'predeprivation process,' for example, by authorizing taxpayers to bring suit to enjoin imposition of a tax prior to its payment, or by allowing taxpayers to withhold payment and then interpose their objections as defenses in a tax enforcement proceeding." [80]

What the High Court doubtless meant by its quoted language is that the taxpayer must be afforded an adequate opportunity to secure relief from the burden imposed by a constitutionally infirm tax statute. Were we to accept the Commission's argument, consideration would be foreclosed to all refund claims based on overpayment caused by a yet undeclared *constitutional infirmity* in the state tax structure. The urged-for construction clearly would make our law vulnerable to a due process attack. Taxpayers would be subjected to an *incontestable loss of property contrary to the Court-declared state obligation.* "[T]he Due Process Clause of the Fourteenth Amendment obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation.... In providing such relief, a State may either award full refunds to those burdened by an unlawful tax or issue some other order that 'create[s] in hindsight a nondiscriminatory scheme.' "[81] (Emphasis ours.)

## SUMMARY

Because *Harper* mandates that *Davis* be applied retroactively, Taxpayers are entitled to the refund they seek. The Income Tax Division stipulated below to the *correctness and timeliness* of the refund claims here in contest and retained this position until its post-*Harper* change of mind. For the reasons stated in the opinion, the Commission *must* be held bound by its earlier position. We hence remand *this cause* to the agency whence it came with directions to allow Taxpayers' timely refund claims together with such interest,[82] if any, that is their due under the applicable state law.[83] *Today's pronouncement addresses only the rights of the six Taxpayers before us. We express no opinion on the timeliness or correctness of any other claims for refund.*

THE TAX COMMISSION'S ORDER IS VACATED AND THE CAUSE REMANDED WITH DIRECTIONS.

LAVENDER, V.C.J., and SIMMS, HARGRAVE, ALMA WILSON, SUMMERS and WATT, JJ., concur;

HODGES, C.J., concurs in result.

KAUGER, J., concurs specially.

KAUGER, Justice, concurring in result:

I agree with the Court's adoption of retroactivity as the general rule for jurisprudential application based on *Harper v. Virginia Dep't of Taxation*, 509 U.S. ——, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993).[1] However, I

---

**80.** *Harper, supra* note 2, 509 U.S. at ——, 113 S.Ct. at 2519 (quoting from *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco,* 496 U.S. 18, 36–37, 110 S.Ct. 2238, 2250–2251, 110 L.Ed.2d 17 (1990)).

**81.** *Harper, supra* note 2, 509 U.S. at ——, 113 S.Ct. at 2520 (quoting from *McKesson, supra* note 80, 496 U.S. at 31 and 40, 110 S.Ct. at 2247 and 2252).

An *effective* and *evenhanded* mechanism for the state's return "in hindsight" of unconstitutionally exacted revenue is mandated by federal due process. *Harper, supra* note 2, 509 U.S. at ——, 113 S.Ct. at 2520. Its command will go *unheeded* if *timely* refund claims for voluntary pre-*Davis* overpayment are rejected out-of-hand as excludable by our statutory framework of available remedies.

**82.** Taxpayers sought interest on refunds. Because the Commission decided no refunds were due, it did not reach the interest claim.

**83.** *See supra* note 64 for pertinent terms of 68 O.S.1981 § 2373. We do not, and need not, today reach for discussion Taxpayers' remedy for refund of tax paid more than three years *before* refund request.

**1.** In announcing the rule in *Harper v. Virginia Dep't of Taxation,* 509 U.S. ——, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), the Supreme Court provided the parameters for a state court's retroactive application of a rule. The opinion provides in pertinent part:

"The constitutional sufficiency of any remedy thus turns (at least initially on whether Virginia law 'provide[s] a[n] [adequate] form of 'predeprivation process,' for example, by authorizing taxpayers to bring suit to enjoin imposition of a tax prior to its payment, or by allowing taxpayers to withhold payment and then interpose their objections as defenses in a tax enforcement proceeding.' ... Because this

write separately to emphasize that this practical, predictable and equitable approach could have been adopted six years ago when *Harry R. Carlile Trust v. Cotton Petroleum Corp.*, 732 P.2d 438, 450 (Okla.1987), *cert. denied,* 483 U.S. 1007, 1021, 107 S.Ct. 3232, 3265, 97 L.Ed.2d 738, 764 (1987) was promulgated. Because the only viable issue addressed concerns retroactive application of a Supreme Court decision, today's opinion would have been unnecessary had the issue been resolved in favor of retroactivity in *Cotton Petroleum.* In *Cotton Petroleum,* I dissented to the majority's adoption of a completely prospective application of the opinion. I was joined by my colleague, Justice Summers, in my concern that consistency and predictability be accorded our rulings. Today's adoption of the general rule of retroactive application will accomplish that goal.

Just as there was no justification in 1987, to withhold the benefits of a new rule from the prevailing party or those similarly situated litigants who properly preserve the issue on appeal, there is none in 1993. Application of the pipeline doctrine to only those cases considered direct appeals creates an unnecessary distinction without a difference.[2] Parties, whether on direct appeal or in a collateral proceeding, seek to enforce individual rights. Litigants should not be treated disparately. When litigants begin in the same starting blocks, have vision enough to foresee the change, timely assert and protest their rights, and establish their legal position in the appellate pipeline, all should be entitled to share in the fruits of victory of a favorable judicial decision.

## CORRECTED ORDER OF CLARIFICATION

HODGES, Chief Justice.

Appellee's petition for rehearing is granted for the limited purpose of clarifying the applicability of our opinion herein published at 64 O.B.J. 2885 (10/2/93). In all other respects, rehearing is denied. Appellee's motion for oral argument is denied.

The OTC asks us to clarify whether our opinion determines the rights and remedies of the parties to this appeal **or** of all taxpayers who, on or before April 15, 1989, filed claims for refund of income taxes voluntarily paid on their civil service or military income for the 1985 and/or subsequent tax years. The OTC stipulated, as recited in Part I of our opinion, that the final determination of the legal issues presented by these claims would govern all similarly situated taxpayers who have timely sought a refund and represented to this Court that the OTC had administratively consolidated the cases of more than 30,000 taxpayers, apparently through a procedure similar to the agreement to abide in 68 O.S. 1991, § 226(d).

■ In the last paragraph of Part V, D. of our opinion, we concluded that "§ 2373 **does not bar** refund to taxpayers who voluntarily overpaid **under presumptively valid statutes** and then timely made refund claims **after** a judicial pronouncement of the statute's infirmity. To hold otherwise would violate the anti-discrimination component of our state constitution's due process clause." Stated another way, for purposes of clarification, § 2373 of Title 68 of the Oklahoma Statutes permits an income taxpayer to give notice of an overpayment and claim a refund of any portion of income taxes voluntarily reported and paid during the three years immediately preceding the date of notice to the Oklahoma Tax Commission of the overpayment and refund claim.

The legal conclusion as to § 2373 in Part V, D. of our opinion is binding on the appellee in other proceedings on refund claims of

issue has not been properly presented, we leave to Virginia courts this question of state law and the performance of other tasks pertaining to the crafting of any appropriate remedy. Virginia 'is free to choose which form of relief it will provide, so long as that relief satisfies the minimum federal requirements we have outlined.' ... State law may provide relief beyond the demands of federal due process ... but under no circumstances may it confine petitioners to a lesser remedy ..." (Citations omitted.)

2. Because the judgment under review was void ab initio, it was unnecessary to address this issue in *Harry R. Carlile Trust v. Cotton Petroleum Corp.*, 732 P.2d 438, 450 (Okla.1987), *cert. denied,* 483 U.S. 1007, 1021, 107 S.Ct. 3232, 3265, 97 L.Ed.2d 738, 764 (1987).

taxpayers who gave notice of an overpayment and claim for refund of income taxes reported and paid during the three years immediately preceding the date of the notice thereof to the OTC. *Kay Electric Cooperative v. State ex rel. Oklahoma Tax Commission,* 815 P.2d 175 (Okla.1991). That is, the refund provisions of § 2373 provide a **remedy** for the six taxpayers who are parties hereto and to any other taxpayer who reported and paid income taxes on federal civil service and military retirement income for the 1985 tax year and gave notice of the overpayment and claim for refund before the expiration of three years from the report date for the 1985 tax year or three years from April 15, 1986; for the 1986 tax year if the notice of claim was submitted on or before April 15, 1990; and for the 1987 tax year if the notice of claim was submitted on or before April 15, 1991.

As stated in the Summary to our opinion, the **timeliness and mathematical correctness** of the overpayments and refunds claimed by the six taxpayers who are parties hereto were agreed to by stipulation. Our opinion determines that the six taxpayer/parties have a **right** to the refund of the stipulated amounts of overpayments. The timeliness and mathematical correctness of the overpayments and refunds claimed by similarly situated taxpayers who are not parties hereto have not been determined by the OTC and are not before us. Neither our opinion nor this order determines the **right** of any taxpayer other than the six taxpayer/parties to a refund. Because we have determined that the refund **remedy** provided in § 2373 is available to all similarly situated taxpayers, the OTC is directed to proceed to process the refund claims submitted by similarly situated taxpayers and determine the timeliness of the notices of claim and mathematical correctness of the claimed overpayments.

In light of our clarified conclusion that the Legislature has provided a refund mechanism to all taxpayers timely submitting claims under § 2373 of Title 68, it is unnecessary to determine the adequacy of other taxpayer remedies under the Due Process Clause of the Fourteenth Amendment.

DONE BY ORDER OF THE COURT IN CONFERENCE this 17th day of March, 1994.

HODGES, C.J., and SIMMS, HARGRAVE, OPALA and WILSON, JJ., concur.

LAVENDER, V.C.J., and KAUGER, SUMMERS and WATT, JJ., concur in part and dissent in part.

SUMMERS, Justice, dissenting to the Order of Clarification but otherwise concurring in denial of rehearing.

The Order of Clarification states that the opinion is binding on the Tax Commission "in other proceedings on refund claims of taxpayers who gave notice of an overpayment and claim a refund of income taxes reported and paid during three years immediately preceding the date of the notice thereof to the OTC." This language reflects an improper expansion of judicial power.

Our opinion in this case states *"Today's pronouncement addresses only the six claims before us. We express no opinion on the refundability or correctness of other claims."* In *Kay Electric Cooperative v. State ex rel. Okla. Tax Commission,* 815 P.2d 175 (Okla.1991), we likewise stated that "This Court's opinion in the present appeal is only binding on the entities which are parties to the actions." *Id.,* 815 P.2d at 178. Obviously, a taxpayer who is not before this Court in the present case is not denied his or her day in court, and remains free to make any legal arguments he or she chooses in other Tax Commission proceedings. *Id.* Does the same rule apply to the Tax Commission, or is it somehow singled out for different treatment? I maintain the Tax Commission is bound by the opinion, but only to the same extent as any other party.

The exercise of judicial power in a particular case is limited to those parties actually before the court in that proceeding, and this limitation is imposed by the Due Process Clause. *Ford v. Ford,* 766 P.2d 950, 954 (Okla.1989). The Court today states that certain taxpayers not before us are "similarly situated" to those who are, and that the Tax Commission should pay the claims of these

similarly situated taxpayers. The Order of Clarification thus transmutes the proceeding into a type of class action, in that it gives judicial relief to members of a class of taxpayers. See the description of class actions in 12 O.S.1991 § 2022. We have held that a class action to restrain the collection of a tax, or to "roll back" assessed taxes, is improper. *Whig Syndicate, Inc. v. Keyes,* 836 P.2d 1283, 1287–1288 (Okla.1992). No class has been certified, and no arguments are before this Court that such a class should be, or could be, certified in a proceeding such as this.

The opinion thus grants relief beyond that framed by the parties before us. We have stated that we may raise an issue *sua sponte* when certain conditions are present. For example, in a public-law controversy on an issue actually raised by a party the Court may supply the theory. *First Federal Savings & Loan v. Nath,* 839 P.2d 1336, 1343 n. 35 (Okla.1992).[1] Clearly, this controversy over the extent to which payments from state funds are due these taxpayers based on the U.S. Constitution presents a public-law controversy.[2] But the issue as to whether the scope of the opinion should be enlarged to embrace nonparties so as to provide them relief is raised on a petition for rehearing. Just as this Court in its opinion stated that the Tax Commission was held to its previous arguments, likewise the belated attempt by the taxpayers to expand the reach of judicial process in this case should be rejected as waived.[3]

In *Kamen v. Kemper Financial Services, Inc.,* 500 U.S. 90, ——, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) the Supreme Court stated it could explore theories not advanced by the parties. The Court also explained that when legal theories relevant to a controversy are not examined "truncated law" results. Clearly, a court may decline to examine an untimely claim, and thus an opinion may properly express truncated law.[4] The Court in *Kamen* explained, however, that an opin-

---

1. See *Kamen v. Kemper Financial Services, Inc.,* 500 U.S. 90, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) where the Court explained that when a claim or issue is properly before the Court it is not limited to a particular theory. *Id.* 500 U.S. at ——, 111 S.Ct. at 1718. But courts are not free to act as advocates and to raise claims that should be raised by the parties. *See e.g., Double-day & Co., Inc. v. Curtis,* 763 F.2d 495, 502–502 (2d Cir.1985), *cert. denied,* 474 U.S. 912, 106 S.Ct. 282, 88 L.Ed.2d 247 (1985), (court could not dispose of claim on the basis of waiver defense when defense was not raised by pleading or evidence at trial); *State of Nev. Employees Association, Inc. v. Keating,* 903 F.2d 1223, 1225 (9th Cir.1990), *cert. denied,* 498 U.S. 999, 111 S.Ct. 558, 112 L.Ed.2d 565 (1990), (court should not *sua sponte* raise defense of *res judicata* without affording the parties an opportunity to brief the issue).

2. See *State ex rel. Oklahoma Tax Commission v. Emery,* 645 P.2d 1048 (Okla.App.1982), (Approved for publication by Supreme Court) where the court explained that the power of taxation is a sovereign power essential to the existence of State government, and *Phillips v. Oklahoma Tax Commission,* 577 P.2d 1278 (Okla.1978) where we explained that a question on the constitutionality of use tax codified at 68 O.S.Supp.1977 § 1402a was one of great public concern.

3. Within the framework of judicial review personal and private rights and claims may be waived, and thus not reviewed, but law involving the power or structure of government as such

relates to the claims of the parties actually before the court may not be waived. *Commodity Futures Trading Commission v. Schor,* 478 U.S. 833, 848–851, 106 S.Ct. 3245, 3255–3257, 92 L.Ed.2d 675 (1986), (contrasting personal constitutional rights to U.S. Const. Art. III as well as the separation of powers principle); *City of Clinton ex rel. Richardson v. Cornell,* 191 Okla. 600, 132 P.2d 340, 343 (1942), (party could not waive the then constitutional requirement under Okla. Const. Art. VII § 25 of holding terms of court at the county seat). Neither the Tax Commission nor the taxpayers may waive or make a stipulation as to the law concerning the power and structure of government and make that stipulation binding upon the Supreme Court. *Cf. Hobbs v. German–American Doctors,* 14 Okla. 236, 78 P. 356, 357 (1904), (subject matter jurisdiction, i.e., the structure of government with respect to the scope of judicial power, may not be waived); *State ex rel. Oklahoma Tax Commission v. Emery,* 645 P.2d 1048 (Okla.App.1982), (Approved for publication by Supreme Court), (estoppel does not apply to the State acting in its sovereign capacity, as in taxation). A court may require the timely assertion of a claim or deem the claim waived. *Kamen v. Kemper Financial Services, Inc.,* 500 U.S. 90, —— n. 5, 111 S.Ct. 1711, 1718 n. 5, 114 L.Ed.2d 152 (1991). *See also Bray v. Alexandria Women's Health Clinic,* 506 U.S. ——, ——, 113 S.Ct. 753, 767, 122 L.Ed.2d 34 (1993), (in explaining that a claim was not in a posture for review the Court found "troubling" the dissenters' "questionable resolution of a legal issue never presented").

4. See authority cited at note 3 *supra.*

ion resting on truncated law should not be used as binding precedent as to theories not examined in the opinion. *Id.,* 500 U.S. at ——— n. 5, 111 S.Ct. at 1718 n. 5. Likewise, our opinion should not be used as binding precedent as to theories not addressed.

Our opinion here declined to address certain theories because they were not timely preserved by the Tax Commission. The opinion thus embodies truncated law to the extent that any such theories were not adjudicated. If perchance the Tax Commission had a viable argument on a theory not addressed in our opinion (for the reason that we held the Tax Commission bound by its earlier assertions, e.g.), and that theory if properly advanced could result in not paying certain taxpayers a refund in a similar situation, today's order on rehearing would incorrectly result in a perpetuation of truncated law at the expense of the State treasury. Neither the Tax Commission nor any other parties should be bound in the future as to issues not addressed in tax opinions unless and until an articulated reason for doing so, such as *res judicata,* has been established by this Court.[5]

The Tax Commission is bound by a judgment and must comply with it. *Branch Trucking Co. v. State ex rel. Oklahoma Tax Commission,* 801 P.2d 686, 690–691 (Okla. 1990). However, as we noted in *Branch* the scope of a judgment, i.e., judicial relief, is determined and limited by the nature of the proceeding before the court. There we explained that the Court did not have the authority to issue a refund because the judicial proceeding was brought to determine the validity of a Commission order, as opposed to a protest. *Id.* at 691. Similarly, in this case, we are limited to granting relief to those persons who are parties, i.e., those who are before us in this case. I dissent from the Order of Clarification insofar as it adjudicates the duty of the Tax Commission to pay other taxpayers' claims not before the Court in this proceeding.

5. In a second suit between the same parties matters that could have been put in issue in the first suit, but were not, may not be raised in the second suit, according to the doctrine of *res judicata,* or claim preclusion. *Veiser v. Arm-*strong, 688 P.2d 796, 800 n. 9 (Okla.1984). *Accord, Oklahoma Gas & Electric v. District Court,* 784 P.2d 61, 64 n. 8 (Okla.1989), (failure to plead a compulsory counterclaim bars a subsequent independent suit thereon).

Vice Chief Justice LAVENDER, Justice KAUGER and Justice WATT advise that they join in these views.