2002 OK 42

**UNITED STATES FIDELITY & GUAR-ANTY CO., Surety/Appellants,**

and

**Sun River Development, Inc., Taxpayer,**

v.

**STATE of Oklahoma, ex rel. OKLA-HOMA TAX COMMISSION, Appellee.**

No. 93,488.

Supreme Court of Oklahoma.

May 21, 2002.

Evan B. Gatewood, Hayes & Magrini, Oklahoma City, Oklahoma, for appellant.

Thomas E. Kemp, General Counsel, Sean R. McFarland, Assistant General Counsel, Oklahoma Tax Commission, Oklahoma City, Oklahoma, for appellee.

HODGES, J.

### I. Issue

¶ 1 The issue before this Court is whether the order forfeiting a surety bond issued on behalf of the Oklahoma Tax Commission (Tax Commission) is directly appealable to this Court. We answer in the negative and dismiss the appeal.

### II. FACTS

¶ 2 Upon obtaining a sales tax permit, Sun River Development, Inc. (Sun River) obtained an $18,000 surety bond from United States Fidelity & Guaranty Co. (USF & G). The bond was executed on August 28, 1986, and was in effect at the time this dispute arose.

¶ 3 On August 11, 1988, the Tax Commission sent Sun River two notifications of proposed assessments for $10,300.60 for additional taxes, interest, and penalties. There is nothing in the record showing that Sun River responded to the proposed assessments, *see* Okla.Stat. tit. 68, § 221(C), (E) (1991), or that

USF & G was notified of the proposed assessments. *See id.* at § 213.

¶ 4 Over ten years later on May 25, 1999, the Tax Commission sent Sun River and USF & G letters notifying them that if the taxes, interest, and penalties of $20,267.60 were not paid within thirty days that the bond would be forfeited. The letter to Sun River was returned as undeliverable. USF & G responded that they viewed the notice as informational only and asked the Tax Commission to contact them if it intended to pursue the matter. The Tax Commission did not respond to this request.

¶ 5 On July 12, 1999, the Tax Commission ordered the surety bond forfeited. Notice was sent to USF & G on July 22, 1999. USF & G requested that the Tax Commission vacate the order and schedule a hearing. At the same time, USF & G filed an appeal "to protect [its] appeal rights".

¶ 6 The Tax Commission filed a motion to dismiss. In response, USF & G filed a dismissal of the appeal. Upon the initial review of the motion to dismiss, this Court denied the motion and, in the same order, denied USF & G's "conditional dismissal". The matter was assigned to the Court of Civil Appeals for disposition on the merits.

¶ 7 The Court of Civil Appeals, finding that it was bound by this Court's order denying the motion to dismiss, held that the Tax Commission's action was barred by the ten-year limitations period of section 223(A) of title 68 of the Oklahoma Statutes. This Court granted certiorari.

### III. PROPRIETY OF RE–EXAMINATION OF DISMISSAL ORDER

▮ ¶ 8 In *LCR, INC. v. Linwood Properties,* 1996 OK 73, ¶ 4, 918 P.2d 1388, this Court defined the parameters for reconsideration of Supreme Court pre-assignment dismissal orders. The extent of re-examination of such an order is subject to its language. *Id.* A motion to dismiss which is denied *"with prejudice to renewal"* may not be relitigated in either this Court or the Court of Civil Appeals. *Id.* at ¶ 5. A motion to dismiss which is denied expressly *"without prejudice to renewal"* may be re-examined *sua sponte*

in this Court or the Court of Civil Appeals. *Id.*

▮ ¶ 9 If an order denying a motion to dismiss is silent as to its prejudicial effect, it may not be altered by the Court of Civil Appeals. *Id.* at ¶ 6. If the Court of Civil Appeals deems an order of this Court which is silent as to its renewability in need of reconsideration, it should request the case be recalled. *Id.* An order which is silent as to its prejudicial effect may be reconsidered by this Court either on certiorari or otherwise. *Id.* at ¶ 7. This Court's pre-assignment order denying the motion to dismiss is silent with respect to its prejudicial effect. Thus, the Court of Civil Appeals correctly reasoned that it was bound by the order. However, it is subject to reconsideration by this Court.

### IV. REVIEW OF TAX COMMISSION'S ORDER OF FORFEITURE

▮ ¶ 10 From a preliminary review of title 68, it would appear that an order of bond forfeiture is directly reviewable by this Court. However, an in-depth review of the applicable statutes necessitates a contrary result making this Court's order denying the motion to dismiss to be in error.

¶ 11 Under the Sales Tax Code, the Tax Commission may require an entity holding a sales tax permit to furnish a surety bond. Okla.Stat. tit. 68, § 1368 (1991). The bond serves as collateral to "protect this state against failure of the taxpayer to pay the tax levied" for sales taxes by the Tax Commission. *Id.*

▮ ¶ 12 Subsection A of section 225 of title 68 of the Oklahoma Statutes provides: "Any taxpayer aggrieved by an order . . . of the Oklahoma Tax Commission directly affecting the taxpayer . . . may appeal therefrom directly to the Supreme Court of Oklahoma." Subsection 202(d)(1) defines "taxpayer" as "[a]ny person owing or liable to pay any state tax." Subsection 202(e) includes a corporation in the definition of "person", and subsection 202(g)(3) includes "insurance companies, including surety and bond companies" in the definition of "corporation". Under these provisions, a surety company may directly appeal to this Court

adverse decisions of the Tax Commission when the surety company is liable for taxes which it directly incurs. A review of the tax code shows that this conclusion only applies if the surety company is subject to liability for having incurred the tax liability in the first place, not by virtue of its surety status and not because of the failure of its principal to properly remit taxes.

¶ 13 Under Oklahoma's Uniform Tax Procedure Act, Okla.Stat. tit. 68, §§ 201–263 (1991), a surety may fall within two different classifications: one as a business or corporation who has directly incurred tax liability, and the other as a surety who has incurred a contractual collateral obligation for another's default. Under the first classification, a surety is included within the definition of "taxpayer." The issue then is whether, under the second classification, a surety is a "taxpayer" for purposes of section 225 when it is acting as a surety.

¶ 14 A tax is a pecuniary burden imposed upon a class of individuals, businesses, or other entities for support of government. Black's Law Dictionary 1307 (5th ed.1979). A sales tax is a statutorily imposed burden "on the sale of goods and based on their value." *Id.* at 1308. A tax liability is incurred by operation of law, not by contract. *See id.* Because a surety's liability is contractual, it cannot be a tax liability.

¶ 15 Rather, a surety is defined as "one who, at the request of another, and for the purpose of securing to him a benefit, ... hypothecates property as security therefor." Okla.Stat. tit. 15, § 371 (1991). Hypothecate means "[t]o pledge property as security or collateral for a debt." Black's Law Dictionary 668 (5th ed.1979). A statutorily-required surety bond is a contract sub-

ject to statutory mandates. *Lum v. Lee Way Motor Freight, Inc.,* 1987 OK 112, ¶¶ 16–22, 757 P.2d 810, 815–816. Thus, the liability incurred by a surety is contractual for losses incurred by the principal's failure to properly remit taxes owed to the state; the liability is not a result of a statute imposing a tax. The liability incurred by the surety is not for taxes but a collateral obligation for the principal's failure to perform its statutory obligations. Thus, a surety acting in its capacity as a surety is not a taxpayer for purposes of section 225 of title 68. Even though this distinction is technical, it is the one made by the Legislature in Oklahoma's tax code.

¶ 16 The Oklahoma Legislature has recognized this difference in the manner provided for collection procedures. The collection procedures for taxes is statutorily different than for collection of the surety bond proceeds. When a tax assessment becomes final, the Tax Commission may issue a tax warrant for the collection of taxes. Okla. Stat. tit. 68, § 231 (1991). The tax warrant constitutes a judgment against the taxpayer and a lien upon the taxpayer's property. *Id.* In the present case, the Tax Commission did not seek recourse against the taxpayer Sun River except for sending notices.

¶ 17 In contrast as a prerequisite to collecting on a surety bond, the Tax Commission issues an order of forfeiture. Unlike a tax warrant, the order of forfeiture is not a final order or judgment. It does not completely dispose of all the issues nor does it prevent judgment against the surety. *Gilliland v. Chronic Pain Associates, Inc.,* 1995 OK 94, ¶¶ 6–7, 904 P.2d 73; *see* Okla.Stat. tit. 12, § 953 (2002); Okla.Stat. tit. 68, § 225 (2002); Okla.Stat. tit. 75, § 312 (2002)[1]; Black's Law Dictionary 567, 756 (5th ed.1979). The forfeiture order does not cre-

---

1. We recognize that article II of the Administrative Procedures Act (APA), which consist of sections 308a through 323 of title 75 of the Oklahoma Statutes, does not apply to the Tax Commission. Okla.Stat.tit. 75, § 250.4(B)(1) (2002). This exclusion includes section 318 addressing judicial review of final agency orders. *Id.* at § 318.

The forfeiture order was not a final agency order for purposes of the APA, *see id.* at § 312, but a statement by the Tax Commission that taxes were owed by the principal and the Tax

Commission intended to fulfill its obligations to proceed on the bond. A final agency order pursuant to the APA is made after an individual proceeding, which this was not. *Id.* at § 311. It also is one that includes "findings of fact and conclusions of law, separately stated." *Id.* at 312(A)(2). The forfeiture order before this Court bears none of the indicia of a final agency order. Even if Article II of the APA applied to the Tax Commission, section 318 of title 72 would not apply because the forfeiture order was not a final agency order.

ate any liability on the surety's part, the Tax Commission must seek a judgment in the district court in order to effectuate the surety's liability, and the forfeiture order does not conclude the litigation between the Tax Commission and the surety. The forfeiture order is no more than a finding that taxes are owed by the bond's principal and a statement of intent that the Tax Commission intends to proceed on the bond.

¶ 18 If the surety does not pay over the bond proceeds, then the Tax Commission "shall proceed" against the surety in district court. Okla.Stat. tit. 68, § 213 (2002). The Tax Commission's forfeiture order is similar to that addressed in *State ex rel. Okla. Dept. of Mines v. Jackson*, 1997 OK 149, 950 P.2d 306. The Tax Commission, like the Department of Mines, "is vested with the statutory authority to declare the performance bonds forfeited but lacks power to affect the sureties' liabilities." *See* 1997 OK 149 at ¶ 13, 950 P.2d 306. This Court stated: "Suit may be brought in the district court either to recover on the bonds or to secure exoneration of liability." *Id.* As in *Jackson*, the Tax Commission may sue in district court to recover on the bonds at which time USF & G may assert any available defenses. Also USF & G may seek exoneration of liability by filing suit. Okla.Stat. tit. 68, § 213 (2002). This is the procedure that should have been followed in the case now before this Court.

## V. CONCLUSION

¶ 19 USF & G is not liable for a tax but is liable, if at all, for the loss to the state for Sun River's failure to perform it sales tax obligations. USF & G, acting as a surety, is not a taxpayer for purposes of section 202 of title 68. Thus, the forfeiture order was not directly appealable to this Court under sec-

1. 68 O.S.2001 § 1368(A).

2. 68 O.S.Supp.1998 § 225, *infra* note 39.

3. For the terms of Art. 2 § 6, Okl. Const., see *infra* note 30, and the text in Part II(A) *infra*.

4. For the terms of Art. 5 § 46, Okl. Const., see *infra* note 45, and the text in Part II(B) *infra*.

tion 225 of title 68. The Court of Civil Appeals' opinion is vacated. The appeal is dismissed.

HARGRAVE, C.J., HODGES, LAVENDER, SUMMERS, BOUDREAU, JJ., concur.

WINCHESTER, J., concurs in result.

KAUGER, J. (joins OPALA, J.), concurs in part; dissents in part.

WATT, V.C.J. (joins OPALA, J.), OPALA, J. (by separate writing,), dissents.

OPALA, J., with whom WATT, V.C.J., and KAUGER, J., join, dissenting.

¶ 1 The *court dismisses* this appeal from the Oklahoma Tax Commission's [OTC] order declaring forfeiture of a statutory § 1368(A) bond [1] upon concluding that appellate review of that order is unauthorized by statute.[2]

¶ 2 I recede from the court's pronouncement. **It is fraught with serious constitutional flaws. Today's denial of a surety's access to direct appeal from OTC's forfeiture order clearly offends the state as well as the federal fundamental law.** It is also contrary to the legislative intent. Violated by the court's pronouncement are these constitutional mandates: (a) **equal, uniform and unimpeded access to judicial review** must be accorded to all final agency orders (Art. 2 § 6, Okl. Const.),[3] (b) **uniformity of procedure** must be extended to judicial review of agency forfeitures of statutory bonds (Art. 5 § 46, Okl. Const.),[4] (c) **agency procedures must comply with the strictures of equal protection**[5] (as well as of the antidiscrimination component of the state due process clause, Art. 2 § 7, Okl. Const.) [6] and

5. For the terms of the Equal Protection Clause, see *infra* note 48, and the text in Part II(C), *infra*.

6. For the terms of Art. 2 § 7, Okl. Const., see *infra* note 31, and the text in Part II(C), *infra*.

(d) *de novo* judicial review of agency-found jurisdictional facts (Due Process Clause of the 14th Amend., U.S. Const., and of Art. 2 § 7, Okl. Const.)[7] **must be accorded to litigants adversely affected by the administrative process of adjudication.** Moreover, the appeal's dismissal exposes OTC's bond forfeitures to a serious risk of fundamental-law attacks on the fairness and neutrality of the agency process.[8]

¶ 3 The only judicial review of an **OTC bond forfeiture declaration** to be recognized as statutorily prescribed is by appeal to this court—*which alone may afford corrective relief.* A bond forfeiture order stands *impervious to a collateral attack.* If it is **not** made subject to direct attack by appeal (or by some other authorized method), as the court holds today, *it becomes forever unassailable* unless, of course, it be facially void. The court's rejection of the surety's appeal *denies* it the law's only avenue of relief by direct appeal. *What is even more shocking is that today's opinion injects into the enforcement process for statutory bonds a fatal fundamental-law flaw of court-created procedural asymmetry by setting apart OTC's forfeitures as a distinct subclass that alone is made impervious to judicial*

*re-examination via direct review in any forum.*[9]

## I

### TODAY'S DISMISSAL CREATES A SERIES OF FATAL CONSEQUENCES FOR THE STATUTORY BOND ENFORCEMENT REGIME

#### A.

#### *Settled Law Makes All District–Court Forfeitures Appealable By Right*

¶ 4 Oklahoma's district-court procedural regime for establishing bail bond liability consists of three distinct stages.[10] These are: (a) the court's declaration of forfeiture upon a criminal defendant's failure to appear, (b) the post-forfeiture imposition (or exoneration) of the surety's liability upon its bond, which must be settled in a direct attack (by vacation quest or appeal or by both) and (c) post-judgment procedure for enforcing surety's liability.[11] At the conclusion of each stage, a direct appeal is the aggrieved party's due.[12]

#### B.

#### *A Forfeiture Order Entered By Any Art.*

those stages are completed may judgment be entered for the penalty on the bond. Although a supersedeas bond is posted in the trial court, judgment for its penalty may also be entered by the Supreme Court. 12 O.S.2001 § 990.4(H).

---

7. For the Due Process Clause of Art. 2 § 7, Okl. Const. and of the 14th Amend. see *infra* notes 31 and 53, and the text in Part II(E), *infra*.

8. *See* text in Part II(D), *infra*.

9. A direct attack is that which is launched in a manner and within the time authorized by law. *In re Hess' Estate*, 1962 OK 74. ¶ 8, 379 P.2d 851, 853. For the definition of "collateral attack" see *infra* note 28.

10. See district court procedure for enforcing liability of the surety on bail bonds, 22 O.S.2001 § 1108; 59 O.S.2001 § 1332.

11. Although not immediately apparent to an untrained eye, the district court's trichotomous-division regime no less rigidly governs statutory bonds that are posted in the agencies as it does those given in other courts. The procedure for handling judgments on supersedeas bonds follows the described pattern. A Supreme Court judgment on supersedeas bond must be preceded by (1) "a forfeiture" that occurs when the trial court's decision is affirmed and (2) this court's denial of a direct attack on that decision launched through rehearing process. Only after

12. The terms of 59 O.S.2001 § 1332(G) and (H) provide in pertinent part:

G. The above procedures *shall be subject to the bondsman's rights of appeal.* The bondsman or insurer may appeal an order and judgment of forfeiture pursuant to the procedures for appeal set forth in Section 951 et seq. of Title 12 of the Oklahoma Statutes. To stay the execution of the order and judgment of forfeiture, the bondsman or insurer shall comply with the provisions set forth in Section 990.4 of Title 12 of the Oklahoma Statutes.
H. For municipal courts of record, the above procedures are criminal in nature and ancillary to the criminal procedures before the trial court *and shall be subject to the bondsman's right of appeal.* The bondsman or insurer may appeal an order and judgment of forfeiture by the municipal courts of record to the Court of Criminal Appeals.
(emphasis supplied).

## II Agency [13] Is A Final (End–Of–The–Line) Order Appealable By Right

¶ 5 The procedural regime that governs an Art. II agency's bond enforcement process also is divided into three separate stages. These consist of: (1) the **agency's** declaration of bond forfeiture upon finding a principal obligor's default, (2) the post-forfeiture *imposition (or exoneration) of the surety's liability* for the bond's penalty [14] in a district-court action (brought *either* by the obligee *or* by the surety) and (3) the post-judgment collection process.[15] At the conclusion of **each phase in this trichotomous division,** an appeal from each stage-ending decision is the aggrieved party's due.[16] In sum, a bond forfeiture by an Art. II agency is treated as a **final (end-of-the line) order**[17]— one that is reviewable **by direct appeal to the district court.**[18]

## C.

## An OTC Bond Forfeiture, like that by the District Court or by an Art. II Agency, Is a Final (End–Of–The–Line) Order Appealable by Right

¶ 6 The administrative bond enforcement process began in this case with OTC's determination of forfeiture.[19] Upon the agency's

---

**13.** Art. II of the Administrative Procedures Act, 75 O.S.2001 § 309 *et seq.*

**14.** "A penalty is a sum which a party agrees to pay or forfeit in the event of a breach ... where the covenant to pay is joined in by one or more sureties to ensure that the person injured shall collect ... Charles T. McCormick, *Handbook on the Law of Damages* § 146 at 600 (1935)," quoted in Black's Law Dictionary 1154 (7th ed.1999). As used in this opinion, **penalty** means simply the surety's obligation on the bond upon breaching its condition.

**15.** *State ex rel. Oklahoma Department of Mines v. Jackson,* 1997 OK 149, ¶ 13, 950 P.2d 306, 310.

**16.** *State ex rel. Oklahoma Department of Mines,* supra note 15 at ¶ 13, at 310, **teaches that under Art. II of the Administrative Procedures Act a direct appeal lies to the district court for review of an agency's bond forfeiture.** "[I]ssues that lie within an [Art. II] agency's original cognizance [such as bond forfeitures] may be considered by the district court only when it is entertaining an administrative appeal." *Id.*

**17.** A "final agency order" is defined by the Administrative Procedures Act [APA], 75 O.S.2001 § 250.3(5), as:
[A]n order that *includes findings of fact and conclusions of law* pursuant to Section 312 of this title, is *dispositive of an individual proceeding* unless there is a request for rehearing and reopening, or reconsideration pursuant to Section 317 of this title and which is subject to judicial review;
(emphasis added).
Absent contrary statutory language **an order is final within the meaning of 75 O.S.2001 § 318 when the administrative process ends and legal obligations resulting from that process are imposed.** *Conoco v. State Dept. of Health,* 1982 OK 94, ¶ 9, 651 P.2d 125, 127.

**18.** *State ex rel. Oklahoma Department of Mines,* supra note 15 at ¶ 13, at 310.

The terms of 75 O.S.2001 § 318 of the APA provide in pertinent part:
A. 1. Any party aggrieved by a **final agency order** in an individual proceeding is entitled to certain, speedy, adequate and complete judicial review thereof pursuant to the provisions of this section and Sections 319, 320, 321, 322 and 323 of this title. ***
(emphasis added).

**19.** OTC is *expressly invested* with authority to declare a § 1368(A) sales tax bond forfeited. 68 O.S.2001 § 1368(B). **Its 12 July 1999 forfeiture order in this cause sets out OTC's findings and conclusions:**
(1) Taxpayer, Sun River Development Inc., as principal, and United States Fidelity & Guaranty Co., as surety, have filed and posted with the Oklahoma Tax Commission Surety Bond # 56–0130–12514–86–9, dated August 28, 1986, in the amount of $18,000.00 to secure the payment of sales tax, penalty and interest due the State of Oklahoma by Taxpayer.
(2) Taxpayer was on August 15, 1988, delinquent in the payment of sales tax for the periods(s) of January 01, 1987 to March 31, 1987 and July 9, 1987 to December 31, 1987, in the amount of $6,720.00, plus penalty in the amount of $688.00 and interest in the amount of $12,859.60, for a total amount due of $20,267.60.
(3) Notice of such delinquency and of the amount then due was mailed to the taxpayer and to the surety on May 25, 1999, as provided by law.
(4) More than thirty (30) days have elapsed since the mailing of said notice and the amount due as stated in said notice remains unpaid.
NOW THEREFORE, IT IS HEREBY ORDERED by the Oklahoma Tax Commission that the said security has been and is forfeited to the Oklahoma Tax Commission, on behalf of the State of Oklahoma, in the amount of $18,000.00 plus accruing interest until paid as provided by law or in the total amount of said security, whichever sum is lesser.

declaration of forfeiture, the surety was entitled to **direct judicial review**[20]—of what, without a doubt, must be deemed OTC's final order[21]—**by appeal to the Supreme Court** which is *the only tribunal with statutory power to grant corrective relief from any final order entered by that agency.*[22] The test of an order's finality, fashioned for appeals under the provisions of 12 O.S.2001 § 953, is equally applicable here.[23] That test is whether the aggrieved party stands precluded by the agency order from proceeding further before *the tribunal upon the process then and there in progress.*[24] The test's articulation fits this case like a glove. By the bond's forfeiture the surety stood remedially barred from proceeding one step further for vindication of any of its pleas for relief then prosecuted before the agency.

¶ 7 **The forfeiture order most certainly meets the § 953 standards for an OTC order appealable as final.** OTC's declaration **conclusively settles** the sole issue then before the tribunal—that of the **principal obligor's (taxpayer's) outstanding, enforceable** *but still unsatisfied* obligation for payment of revenue secured by the

bond. **Beyond the point of forfeiture OTC would be** *sans* jurisdiction, *qua* agency, to **press its claim against the surety.** The surety's only **remaining authorized challenge** to the forfeiture order is by showing *on direct appeal* that (a) the taxpayer does not owe the money secured by the bond, (b) the liability is barred by limitations or (c) the taxpayer owes less than the bond's penalty. USF & G's present appeal to this court seeks to show that the taxpayer's obligation in suit, though perhaps still **outstanding**, came to be extinguished by the law's time bar and is hence no longer **enforceable.**

### D.

### *Appeals From OTC's Final Orders Are Cognizable Solely in the Supreme Court*

¶ 8 An appeal from a final disposition by OTC lies only to the Supreme Court.[25] OTC is explicitly excluded from the provisions of Article II in the Administrative Procedures Act [APA].[26] The law is equally well settled that an agency **forfeiture, like that entered by a court, is subject only to a direct challenge.**[27] No *collateral*

**20.** *State ex rel. Oklahoma Department of Mines, supra* note 15 at ¶ 13, at 310.

**21.** For the APA's definition of "final order" for Art. II agencies, see *supra* note 17.

**22.** The terms of 75 O.S.2001 § 318(B) of the APA provide in pertinent part:

B.1. The judicial review prescribed by this section for **final agency orders,** as to agencies whose final agency orders are made subject to review, under constitutional or statutory provisions, **by appellate proceedings in the Supreme Court** of Oklahoma, shall be afforded by such proceedings taken in accordance with the procedure and under the conditions otherwise provided by law, but subject to the applicable provisions of Sections 319 through 324 of this title, and the rules of the Supreme Court.... (emphasis added).

**Taxpayers** are entitled to direct judicial review of final OTC orders by appeal to the Supreme Court. 68 O.S.Supp.1998 § 225(A), *infra* note 39.

**23.** The court's opinion concedes this much by citing to the § 953 jurisprudence of this court.

**24.** *Hammonds v. Osteopathic Hosp. Found. Ass'n,* 1996 OK 54, ¶ 3, 917 P.2d 6, 7; *Gilliland v. Chronic Pain Associates, Inc.,* 1995 OK 94, ¶ 8,

904 P.2d 73. An order is final within the meaning of 12 O.S.2001 § 953 if it prevents judgment upon the process in progress, even though the aggrieved party would have been free to abandon the course then in pursuit to relaunch or press the same claim along a different remedial track. *Id. Extant § 953 jurisprudence unmistakably and consistently teaches that, to be appealable under this section, an order which "prevents a judgment" must preclude the appealing party from proceeding further in the case for the pursuit of the very relief that is then and there sought. Id.*

**25.** 68 O.S.Supp.1998 § 225, *infra* note 39.

**26.** The terms of 75 O.S.Supp.2001 § 250.4(B) list those State agencies (or those classes of agency activities) explicitly exempted from compliance with the provisions of Article II of the APA (75 O.S.2001 §§ 308a, 309 *et seq.*). The Oklahoma Tax Commission is among the agencies that stand exempted. 75 O.S.2001 § 250.4(B)(1). *Lincoln Bank and Trust Co. v. Oklahoma Tax Com'n,* 1992 OK 22, ¶ 8, 827 P.2d 1314, 1319.

**27.** For the definition of "direct attack" see *supra* note 9. **A bond forfeiture declaration cannot be collaterally attacked in a subsequent action against either the principal or sureties on a**

*attack* [28] will lie upon an agency forfeiture order. If deprived of direct appeal the surety would be precluded from pressing, in a later district court proceeding, any forfeiture-related defenses interposed before OTC. No tribunal other than the Supreme Court is authorized to grant corrective relief from OTC's bond forfeiture.

¶9 In sum, direct judicial review of OTC's bond forfeiture is clearly *USF & G's statutory due.* It is arbitrarily withheld from this surety (and from all other OTC sureties) by this court's pronouncement in utter disregard of the law's time-honored protections.[29]

## II

### TODAY'S DISMISSAL IS FRAUGHT WITH GRAVE CONSTITUTIONAL CONSEQUENCES

bond. *State ex rel. Oklahoma Department of Mines, supra* note 15 at ¶13, at 310; *Scholtes v. State,* 1966 OK 166, ¶7, 420 P.2d 496, 498; *Addington v. State ex rel. Pruet Co. Atty.,* 1935 OK 477, ¶10, 44 P.2d 131, 133; *State ex rel. Wilson Co. Atty., v. Reger,* 1924 OK 833, ¶3, 229 P. 470, 471; *State ex rel. Sullivan v. Littrell,* 1924 OK 585, 226 P. 872, syl 1; *Andrews v. State ex rel. Saye,* 1920 OK 333, 193 P. 873, syl 1.

28. A *collateral attack* is an attempt to avoid, defeat, evade or deny the force and effect of a final order or judgment in an incidental proceeding other than by appeal, writ of error, certiorari, or motion for new trial. *Nilsen v. Ports of Call Oil Co.,* 1985 OK 104, ¶11, 711 P.2d 98, 101 n. 5 (citing *Woods Petro. Corp. v. Sledge,* 1981 OK 89, ¶7, 632 P.2d 393, 396 n. 4). For the definition of "direct attack" see *supra* note 9.

29. *The right to corrective relief by direct appeal from forfeiture orders is accorded to sureties on bonds running to other agencies.* See discussion in Part II(B) that addresses the commands of Art. 5 § 46, Okl. Const.

30. The terms of Art. 2 § 6, Okl. Const., are:

The *courts of justice of the State shall be open to every person,* and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice.
(emphasis added).

31. The terms of Art. 2 § 7, Okl. Const., are:

No person shall be deprived of life, liberty, or property without due process of law.

## A.

*An Unreviewable OTC Forfeiture Order— the Novel Creature of Today's Pronouncement—Offends the Mandate of Art. 2 §§ 6 [30] and 7, Okl. Const.[31]*

¶10 Because today's pronouncement *withholds from every surety* the remedy of direct appeal from OTC's forfeiture, and no collateral attack upon that specie of order *is legally permissible,* every OTC surety now stands deprived by today's pronouncement of access to any reviewing forum. By denying the surety direct access to the relief it seeks, the court's pronouncement offends both the open-access-to-court mandate of Art. 2 § 6, Okl. Const.,[32] and the due process guarantee of Art. 2 § 7, Okl. Const.[33] The

32. For the terms of Art. 2 § 6, Okl. Const., see *supra* note 30. Depriving a surety from access to a reviewing court for judicial scrutiny of a final agency order is violative of Art. 2 § 6, Okl. Const. For exposition of the Art. 2 § 6 access-to-court right, see *Brown v. Burkett,* 1988 OK 13, ¶¶5–6, 750 P.2d 481, 482; *State ex rel. Oklahoma Department of Mines, supra* note 15 at ¶13, at 310; *Carter v. Carter,* 1989 OK 153, ¶2, 783 P.2d 969, 970; *Tulsa Tribune Co. v. Okl. Horse Racing Com'n,* 1986 OK 24, ¶21, 735 P.2d 548, 554–55 (*overruled on other grounds*); *Moses v. Hoebel,* 1982 OK 26, ¶10, 646 P.2d 601, 604; *Elam v. Workers' Compensation Court of State,* 1983 OK 16, ¶¶2–5, 659 P.2d 938, 941–42 (Opala, J., dissenting).

33. For the terms of Art. 2 § 7, Okl. Const., see *supra* note 31. Depriving a surety of direct access to the Supreme Court for review of a terminal OTC bond forfeiture constitutes a denial of due process by arbitrary exclusion. *See* discussion in Part II(C) *infra.* Agencies not governed by the APA's Art. II adjudicative process, 75 O.S.1991 §§ 308a, 309 *et seq.,* are nonetheless bound by those portions of that Article which embrace due process concepts. *C.F. Braun & Co. v. Corporation Commission,* 1980 OK 42, ¶¶24–25, 609 P.2d 1268, 1273–74; *Teleco, Inc. v. Corporation Com'n,* 1982 OK 124, ¶14, 653 P.2d 209, 214; *Harry R. Carlile Trust v. Cotton Petroleum,* 1986 OK 16, ¶10, 732 P.2d 438, 442–43 n. 21; *Amoco Production v. Corp. Com'n of Okl.,* 1986 OK CIV APP 16 ¶20, 751 P.2d 203, 207 (approved for publication by the Supreme Court); *State ex rel. Henry v. Southwestern Bell,* 1991 OK 134, ¶31, 825 P.2d 1305, 1317; *Lincoln Bank and Trust Co. v. Tax Com'n,* 1992 OK 22, ¶8, 827 P.2d 1314, 1319.

latter includes an anti-discrimination component that condemns arbitrary procedural inequalities.[34] Fundamental fairness cannot be afforded except within a framework of orderly and evenhanded application of procedure.[35]

¶ 11 Whenever a legislative act may by judicial interpretation become vulnerable to a fundamental-law infirmity, but through some other construction of the enactment's text both constitutional flaws and uncertainty could be avoided, it is this court's solemn duty to give the statute that meaning which will free its text or application from constitutional doubt.[36] **This principle stands ignored by today's opinion.** *The provisions of 68 O.S.Supp.1998 § 225*[37] *should be so construed as to confer upon an OTC surety the very same right of appeal as that which stands accorded an obligor taxpayer whose liability is secured by the bond.* There can be no doubt that a taxpayer may appeal from a forfeiture order such as that on review here.

¶ 12 In summary, I cannot countenance: (1) *ascribing* to the legislature an intent to deprive OTC sureties of access to this court for direct review of that agency's bond forfeitures and (2) *divining* such intent from *any part* of the Uniform Tax Procedure Code.[38] Mindful of my duty to protect legislation, whenever possible, from fundamental-law doubt, I would hold that every surety on a statutory OTC bond must be accorded in the Supreme Court that range of appellate scrutiny which is coextensive with one that (a) **an aggrieved taxpayer may assert in an appeal from a** *final OTC order*[39] **and one that (b) is available to the surety by appeals from forfeiture entered by an Art. II agency.**[40]

### B.

### *Singling Out an OTC Surety For Different Treatment Offends The Provisions Of Art. 5 § 46, Okl. Const.*

¶ 13 Art. 5 § 46, Okl. Const., *mandates* in absolute terms **statewide procedural uniformity** for an entire class of similarly situated persons or things.[41] By its express terms the legislature is *absolutely prohibited* from regulating court procedure by disuniform

**34.** The Oklahoma Constitution's due process clause, which has a definitional sweep co-extensive with its federal counterpart, contains an anti-discrimination component. *Strelecki v. Oklahoma Tax Com'n*, 1993 OK 122, ¶ 23, 872 P.2d 910, 921; *Ross v. Peters*, 1993 OK 8, ¶ 16, 846 P.2d 1107, 1114 n. 29; *McKeever v. Egbert*, 1934 OK 763, ¶ 15, 40 P.2d 32, 35–36.

**35.** *Joiner v. Brown*, 1996 OK 112, ¶ 6, 925 P.2d 888, 890 (citing *Pryse Monument Company v. District Court of Kay County*, 1979 OK 71, ¶ 5, 595 P.2d 435, 438). "*** It is procedure that spells much of the difference between rule by law and rule by whim or caprice. Steadfast adherence to strict procedural safeguards is our main assurance that there will be equal justice under law." *Joiner, supra* at 890 n. 4, quoting from *Joint Anti–Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 179, 71 S.Ct. 624, 652, 95 L.Ed. 817 (1951) (Douglas, J., concurring).

**36.** **When two different meanings may be ascribed to a statute through judicial construction, the court must arrive at that meaning which will make the enactment impervious to constitutional attack.** *State ex rel. Macy v. Board of County Com'rs of County of Oklahoma*, 1999 OK 53, ¶ 16, 986 P.2d 1130, 1139; *Strelecki v. Oklahoma Tax Com'n*, 1993 OK 122, ¶ 23, 872 P.2d 910, 921;

*Earl v. Tulsa County Dist. Court*, 1979 OK 157, ¶ 8, 606 P.2d 545, 548; *Wilson v. Foster*, 1979 OK 45, ¶ 16, 595 P.2d 1329, 1333 (*overruled on other grounds*); *Neumann v. Tax Commission*, 1979 OK 64, ¶ 7, 596 P.2d 530, 532; *Special Indemnity Fund v. Dailey*, 1954 OK 167, ¶ 9, 272 P.2d 395, 396–97 syl. 1; *Chicago, R.I. & P. Ry. Co. v. Beatty*, 1911 OK 332, 118 P. 367, 369 syl 2.

**37.** For the pertinent terms of 68 O.S.Supp.1998 § 225 see *infra* note 39.

**38.** 68 O.S.2001 §§ 201–263.

**39.** The terms of 68 O.S.Supp.1998 § 225(A) provide:

A. Any taxpayer aggrieved by any order, ruling, or finding of the Tax Commission directly affecting such taxpayer or aggrieved by a final order of the Tax Commission issued pursuant to subsection (g) of Section 221 of this title may appeal therefrom directly to the Supreme Court of Oklahoma.

**40.** *See* cases cited in *supra* note 28.

**41.** See *Johnson v. Tony's Town Mister Quik*, 1996 OK 138, ¶ 5, 915 P.2d 355, 357–58; *Reynolds v. Porter*, 1988 OK 88, ¶¶ 13–19, 760 P.2d 816, 822–24; *Maule v. Independent School Dist. No. 9*, 1985 OK 110, ¶ 12, 714 P.2d 198, 203–04.

laws.[42] Although directed to the law-making assembly, **the terms of § 46 are equally binding on the courts.**[43] This court's own jurisprudence, no less than the legislature's enactments, must faithfully conform to the fundamental law's prohibition against disuniform laws on prohibited subjects.[44] **Judicial procedure is a subject explicitly protected from invasion by disuniformity created either by the Legislature or by the courts.**[45]

¶ 14 **Today's dismissal of USF & G's appeal destroys the symmetry of Oklahoma's procedural regime for review of agencies' bond forfeitures.** Depriving OTC's sureties of access to court for corrective relief from forfeiture orders singles out a subclass of aggrieved litigants for a less favorable treatment than that accorded by law to other agencies' sureties. In sum, the court's opinion creates a disadvantaged subclass—that of OTC sureties—*whose separate existence offends the state's fundamental-law prohibition against disuniform laws on prohibited subjects.*

## C.

### Today's Exclusion of OTC Bond Forfeitures From Direct Review By the Supreme Court Offends The Equal Protection Guarantee of Federal Fundamental Law and the Anti–Discrimination Component of the State Due Process Clause

¶ 15 Just as OTC must conform its procedural regime to due process standards,[46] so also its bond forfeitures must comply with the strictures of equal protection. The command for discrimination-free procedural uniformity comes to us from both state- and federal-law sources. Whenever state law does not provide the authority necessary to carry out federal constitutional commands, resort must be had to the U.S. Constitution to accomplish the constitutionally mandated objective.[47] The effect of singling out OTC bond forfeitures for a different procedural treatment from that accorded to other agency and district court forfeitures is no less offensive to the Equal Protection Clause[48] than subjecting prisoners to a different mode of trial (nonjury) for mental-health commitment from that which is accorded other persons.[49] In both instances a valuable and critical procedural device is withheld from a subclass without any rational relation to

42. *Maule, supra* note 41, at ¶ 12, at 203–04; *Reynolds, supra* note 41, at ¶¶ 13–19, at 822–24; *Great Plains Federal S & L Assn. v. Dabney,* 1993 OK 4, ¶ 2, 846 P.2d 1088, 1095–96 (Opala, J., concurring).

43. *Reynolds, supra* note 41, at ¶¶ 13–19, at 822–24.

44. *Id.*

45. The terms of Art. 5 § 46, Okl. Const., are:
   The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing: *** **Regulating the practice or jurisdiction of,** or changing the rules of evidence **in judicial proceedings or inquiry before the courts,** justices of the peace, sheriffs, commissioners, arbitrators, or other tribunals, or providing or changing the methods for the collection of debts, or the enforcement of judgments or prescribing the effect of judicial sales of real estate;
   (emphasis supplied).

46. *Braun, supra* note 33, ¶¶ 22–24, at 1273–74; *Cotton Petroleum, supra* note 33, at ¶ 17, at 442–43; *Amoco, supra* note 33, at ¶ 20, at 207; *Henry, supra* note 33, at ¶ 31, at 1317; *Lincoln, supra* note 33, at ¶ 8, at 1319.

47. *Groppi v. Wisconsin,* 400 U.S. 505, 508–09, 91 S.Ct. 490, 492–93, 27 L.Ed.2d 571 (1971) teaches that conformity to constitutional procedure is compellable even when there is a lack of authorizing provisions in state law.

48. The Equal Protection Clause of the 14th Amendment requires that no state "deny to any person within its jurisdiction the equal protection of the laws." Although the Oklahoma Constitution does not include an equal protection clause like that found in its federal counterpart, this court has identified a functional equivalent of that clause in the anti-discrimination component of our state constitution's due process section. Art. 2 § 7, Okl. Const., *supra* note 31; *Strelecki, supra* note 34, at ¶ 23. at 921; *Ross, supra* note 34, at ¶ 16, at 1114 n. 29; *McKeever, supra* note 34, at ¶ 15, at 35–36.

49. The ban on judicial review imposed today is as offensive to constitutional standards as that which the Court found in *Baxstrom v. Herold,* 383 U.S. 107, 110, 86 S.Ct. 760, 762, 15 L.Ed.2d 620 (1966), where excluding convicts only from the benefit of jury trial for determination of sanity was held to violate the 14th Amendment. *See also Humphrey v. Cady,* 405 U.S. 504, 508, 92 S.Ct. 1048, 1052, 31 L.Ed.2d 394 (1972).

some characteristic that would make the distinction free from an impermissibly discriminatory impact.[50]

¶ 16 For application of **critical procedural safeguards** all agency bond forfeitures and those of the district court comprise but a single indivisible class. *That class is entitled to direct judicial review of forfeiture orders. This is so because those orders are terminal by nature since they are not subject to collateral attack.* OTC's bond sureties cannot be deprived of a right of appeal unless their exclusion bears a rational relationship to some legitimate objective to be attained.[51] No compelling governmental objective would support today's discriminatory exclusion of OTC sureties. In sum, the court's absurdly restrictive construction of 68 O.S.Supp.1998 § 225 creates a constitutionally impermissible dichotomous division of statutory sureties, making OTC sureties a procedurally disadvantaged subclass.

### D.

*Today's Dismissal Widely Exposes OTC's Bond Forfeitures to the Risk of a Fundamental–Law Attack on the Fairness and Neutrality of the Agency Process*

¶ 17 OTC appears here in two different capacities—as an administrative adjudicator and as a tax collector. In its *former capacity*, OTC sits as the adjudicator of bond forfeitures; in the latter, as a *tax collector*, its primary if not sole focus is on the government's need to protect its revenue stream from every solvent surety standing as an OTC bond obligor. Because these two functions are clearly inconsistent, OTC cannot be deemed an entirely neutral arbiter when it is called upon to declare bond forfeitures. No matter what federal or state law might say about the OTC commissioners' fitness to sit in an adjudicative capacity for declarations of forfeiture, barring the surety from access to a *detached and neutral arbiter for subsequent review of the forfeiture order casts a serious doubt on the constitutional fairness of the antecedent process* by which OTC is permitted to first pass on a bond forfeiture and then **insulate** its own decision from all available judicial scrutiny.

¶ 18 The Constitution's neutrality mandate is **now** extended not just to judges but to agency decisionmakers as well.[52] An administrative tribunal's impartiality is a *sine qua non* element of due process within the meaning of the Fifth and Fourteenth Amend-

**50.** The Equal Protection Clause, although not an absolute guarantee of equality of operation or application of state legislation, is intended to safeguard the quality of governmental treatment against arbitrary discrimination. Legislative classification which sets apart a class without any rational basis therefore offends that clause. In *Wilson v. Foster*, 1979 OK 45, ¶ 13, 595 P.2d 1329, 1332, the court applied equal protection norms to command a jury trial for a litigant who was arbitrarily excluded. Its pronouncement was based on the teachings of *Baxstrom and Cady, supra* note 49.

**51.** A classification which rationally furthers a legitimate state interest will withstand an equal protection challenge. *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S.Ct. 2326, 2332, 120 L.Ed.2d 1 (1992); *Cleburne v. Cleburne Living Center. Inc.*, 473 U.S. 432, 439–41, 105 S.Ct. 3249, 3254–55, 87 L.Ed.2d 313 (1985).

**52.** In *Gibson v. Berryhill*, 411 U.S. 564, 578–79, 93 S.Ct. 1689, 1697–98, 36 L.Ed.2d 488 (1973), the Court held an optician licensing board whose members were drawn wholly from self-employed practitioners could not itself adjudicate unprofessional conduct charges brought against commercially (or non-self-employed) practitioners. The Court rested its holding of constitutional bias on the fact that the board members all possessed a "substantial pecuniary interest" in the outcome of proceedings in which they served as adjudicators. In *Withrow v. Larkin*, 421 U.S. 35, 55, 95 S.Ct. 1456, 1468, 43 L.Ed.2d 712 (1975), the Court found no constitutional infirmity in the combination of investigative and adjudicatory functions in a medical examining board; disqualification is required only when the biasing influence is strong enough to overcome the presumption of "honesty and integrity" of the adjudicators. In *Marshall v. Jerrico, Inc.* 446 U.S. 238, 242, 100 S.Ct. 1610, 1613, 64 L.Ed.2d 182 (1980), the Court held that a statute under which determinations and assessment of penalties for violations of child labor laws are made by regional administrators of Department of Labor, and money from penalties is returned to the Department, did not violate due process **because administrators** act in prosecutorial capacity and **are subject to review** by administrative law judges.

ments.[53] Independent judicial review will not only help maintain public confidence in the integrity of the OTC forfeiture process but also assure its procedural fairness. This court should guard against possible prejudice to the aggrieved party's constitutional and statutory rights by affording the surety the very same access to a § 225 [54] appeal that it gives a taxpayer who stands as the principal obligor on the OTC bond.

### E.

*State and Federal Fundamental–Law Mandates De Novo Appellate Review of the Disputed Bond Forfeiture's Factual Underpinnings*

¶ 19 There is another serious constitutional flaw in the court's pronouncement. This case presents a factual dispute over the correctness of OTC's bond forfeiture. The **factum of that forfeiture** also serves to establish the agency's jurisdiction over the surety bond's enforcement. In the absence of forfeiture OTC has no **cognizance over the surety,** only over the taxpayer. Viewed in this context the OTC forfeiture order doubtless serves as an **adjudication of a jurisdictional fact—the taxpayer's default.**[55] Oklahoma jurisprudence manifests a firm and unswerving commitment to that federal constitutional command by which *de novo* appellate review [56] is required for every agency-found jurisdictional fact.[57] While originally rooted in federal constitutional pronouncements,[58] this principle has since been

---

**53.** The Due Process Clause of the 14th Amend., U.S. Const., commands that no State shall "deprive any person of life, liberty, or property, without due process of law. . . . "

Federal constitutional standards to be considered and complied with here did not arrive at the same time. They evolved in succession over many decades of U.S. Supreme Court's jurisprudence. Neutrality and detachment as a component of the 14th Amendment's Due Process Clause has been federally enforceable against state judicial officials since *Tumey v. Ohio*, 273 U.S. 510, 531–34, 47 S.Ct. 437, 444–45, 71 L.Ed. 749 (1927); the component's later extension to state administrative adjudicators came with *Gibson, supra* note 52, 411 U.S. at 578–79, 93 S.Ct. at 1697–98; lastly, the federal due process mandate for state judicial *de novo* review of agency-found jurisdictional facts arrived much earlier. *Crowell v. Benson*, 285 U.S. 22, 55–56, 52 S.Ct. 285, 293–94, 76 L.Ed. 598 (1932).

**54.** For the pertinent terms of 68 O.S.Supp.1998 § 225(A), supra note 39.

**55.** Jurisdictional facts are facts determining the authority of the lower tribunal to act in a case. The three requisite elements of jurisdiction are the trial tribunal's power (a) over the parties, (b) over the subject matter or (c) to pronounce the contested decision that was rendered. *Estate of Mouse*, 1993 OK 157, ¶ 9, 864 P.2d 1284, 1286; *Hough v. Hough*, 1989 OK 65, ¶ 4, 772 P.2d 920, 921; *Chamberlin v. Chamberlin*, 1986 OK 30, ¶ 8, 720 P.2d 721, 725 n. 15; *Mayhue v. Mayhue*, 1985 OK 68, ¶ 10, 706 P.2d 890, 895; *Scoufos v. Fuller*, 1954 OK 363, ¶ 20, 280 P.2d 720, 723.

**56.** In a *de novo* appellate review the court exercises its judgment independently and without deference to the findings of fact or to the legal rulings made below. *Johnson v. Rodgers*, 756

F.2d 79, 81 (10th Cir.1985); see also *State ex rel. Oklahoma Bar Ass'n v. Perceful*, 1990 OK 72, ¶ 2, 796 P.2d 627, 630 n. 3 (Opala, V.C.J., dissenting).

**57.** *Garrison v. Bechtel Corp.*, 1995 OK 2, ¶ 8, 889 P.2d 273, 278 (a fact-based compensation court dispute over which state was the place where the employment contract was entered into presents a jurisdictional issue for *de novo* review); *Mahan v. NTC of America*, 1992 OK 8, ¶ 5, 832 P.2d 805, 806 (*overruled on other grounds* ) (a fact-based compensation court dispute over claimant's employment with the respondent tenders a jurisdictional issue for *de novo* review); *Brown v. Burkett*, 1988 OK 49, ¶ 4, 755 P.2d 650, 651 n. 6 (a master-servant relationship is a jurisdictional prerequisite for a compensation award). In *McKeever Drilling Co., supra* note 34 at ¶ 17, at 35–36, the court announced that in reviewing an award of the then compensation commission, it will not accept as conclusive that entity's findings of fact upon a jurisdictional question; rather, it will weigh the evidence and make its own "independent determination of fact" upon the record submitted. *McKeever*, relying on *Crowell*, *supra* note 53, 285 U.S. at 56, 52 S.Ct. at 294, distinguished between *ordinary facts*, which were those "necessary in the routine of administering the relief," and jurisdictional facts, which are "fundamental or jurisdictional in the sense that their existence is a condition precedent to the operation of the statutory scheme." *McKeever Drilling Co., supra* note 34 at 35.

**58.** *Ohio Valley Water Co. v. Ben Avon Borough*, 253 U.S. 287, 288–91, 40 S.Ct. 527, 528–29, 64 L.Ed. 908 (1920); *Ng Fung Ho. v. White*, 259 U.S. 276, 284–85, 42 S.Ct. 492, 495, 66 L.Ed. 938 (1922); *Crowell, supra* note 53, 285 U.S. at 56, 52 S.Ct. at 294.

woven into our own fundamental-law fabric.[59] By its terms judicial scrutiny of jurisdictional facts must be afforded by plenary, independent and nondeferential re-examination.[60] Federal jurisprudence, as well as our own, calls for mandatory *de novo* review of jurisdictional facts tendered before an administrative agency.[61] This norm continues as a vital component of the federal due process.[62]

¶ 20 Forfeiture presents no ordinary dispute.[63] Here it tenders for review facts that determine OTC's cognizance over the surety's obligation. The surety's defense of limitations is inextricably interconnected with the taxpayer's default and the consequent forfeiture. Nay, OTC's very jurisdiction over the surety depends on the legal correctness of the agency findings that *at the critical time in question* (1) there was a taxpayer's default and (2) OTC's (obligee's) claim against the taxpayer was not then time-barred. If the tax liability did in fact stand extinguished by limitations, jurisdiction over the surety could not be lawfully exerted.[64]

**59.** *McKeever, supra* note 34 at 35 (the due process clause in Art. 2, § 7, Okl. Const., has a definitional range that is coextensive with its federal counterpart, 5th and 14th Amendments, U.S. Const.). The terms of Art. 2 § 7, Okl. Const., provide: "No person shall be deprived of life, liberty, or property, without due process of law." See also *Black v. Ball Janitorial Service, Inc.*, 1986 OK 75, ¶ 8, 730 P.2d 510, 513 n. 9; *Harry R. Carlile Trust, supra* note 33, at ¶ 12, at 443 n. 25.

**60.** In *Salve Regina College v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991), the Court holds that intermediate appellate courts in the federal system must review *de novo* state-law determinations of the U.S. district courts. There, *de novo* appellate review is variously described as "plenary", "independent" or "nondeferential". The Court observes that "[w]hen de novo review is compelled, no form of appellate deference is acceptable." *Salve, supra*, 499 U.S. at 238, 111 S.Ct. at 1224. "Because the error sought to be corrected is one from resolution of a jurisdictional fact issue, no deferential standard of review may be accorded ... to the trial tribunal's finding of employment status. Non-jurisdictional fact issues, if supported by any competent evidence, are accepted as binding the trial tribunal findings." *Brown, supra* note 57 at 651 n. 6 (*citing Parks v. Norman Municipal Hospital*, 1984 OK 53, ¶ 12, 684 P.2d 548, 552).

**61.** In *Ohio Valley Water Co., supra* note 58, 253 U.S. at 289–291, 40 S.Ct. at 528–529, the Court holds that, as a matter of due process binding upon the states, the appellate court must give judicial review *de novo* for appellate resolution of all jurisdictional fact issues coming from administrative agencies. In *Ng Fung Ho, supra* note 58, 259 U.S. at 284–85, 42 S.Ct. at 495, the Court held in a Chinese immigrant case that "jurisdictional facts" must be judicially reviewable *de novo* as a matter of federal due process. *See also Crowell, supra* note 53, 285 U.S. at 56, 52 S.Ct. at 294, a case arising under the Longshoremen's and Harbor Workers' Compensation Act which authorized the administrative body to award compensation (a) when the master-servant relationship existed and (b) when the injury was received upon navigable U.S. waters. There, the Court said: "A different question is presented where the determinations of fact are fundamental or 'jurisdictional' in the sense that their existence is a condition precedent to the operation of the statutory scheme."

**62.** *Ohio Valley Water Co., supra* note 58, 253 U.S. at 289–291, 40 S.Ct. at 528–529; *Ng Fung Ho, supra* note 58, 259 U.S. at 284–85, 42 S.Ct. at 495; *Crowell, supra* note 53, 285 U.S. at 56, 52 S.Ct. at 294.

**63.** For the definition of *ordinary facts*, see *McKeever Drilling Co., supra* note 57.

**64.** A surety must have access **timely and effectively** to press its defenses against forfeiture. OTC's persistence in (a) **blocking USF & G from pressing** its time-bar defense and (b) *frustrating* its access to judicial review of the forfeiture order by the Supreme Court **might reinforce** the surety's **defense of exoneration** to be pressed in the district court proceeding that will follow today's dismissal of its appeal. 15 O.S.2001 § 377(2); Restatement (Third) Suretyship and Guaranty §§ 19, 34(3), 37(1)(3)(e), 37(3)(e), 39, 43, 50. Exoneration is a statutory (§ 377) defense to liability on the forfeited bond. When a creditor acts in a way that impedes, impairs or destroys a surety's remedies and defenses, it creates an avenue of escape from liability by *exoneration*. OTC's acts, singly and in combination, operate to deprive the surety of its just and legally conferred access to press its lawful defenses, which in itself may be sufficient to constitute a complete exoneration in the district court proceedings to follow. *Exoneration can be prevented if the court today would fashion a procedure to afford the surety an opportunity timely to raise the limitations defense at the forfeiture stage rather than as a statutory defense in the district court's judgment stage.*

According to the *Restatement, supra*, at § 34, a surety's exoneration can be triggered by acts of the creditor which "increase the surety's risk of loss" or "fundamentally alters the risks imposed on the secondary obligor." *Restatement, supra*, at § 34. Certain acts by the creditor have been long recognized as constituting a complete exoneration defense, such as allowing "the statute of

In sum, both the tax debtor's default and the propriety of forfeiture present disputed jurisdictional fact issues for *de novo* consideration on review. **Withholding from USF & G an opportunity for judicial review of OTC's forfeiture clearly offends that component of federal due process which unequivocally mandates judicial *de novo* scrutiny of agency-found jurisdictional facts.**

### III

### SUMMARY

¶ 21 Because no bond forfeiture (whether administrative or judicial) may be vulnerable to a collateral attack, today's pronouncement leaves USF & G (surety) *without any means of securing corrective relief from* OTC's forfeiture, which the court comes to regard as nonreviewable. I must accordingly recede from the court's dismissal of USF & G's appeal.

¶ 22 OTC's forfeiture order is appealable. It is a *conclusive determination* of taxpayer's default upon an **outstanding, enforceable and still unsatisfied obligation of the principal obligor. With what show of reason and constitutional fairness can the same order be appealed under § 225 by the defaulting taxpayer but not also by the surety whose bond stands as security for taxpayer's liability?** Depriving OTC's bond obligor of appellate remedy strips it of important fundamental-law protections through denial of: (a) access to direct judicial review of OTC's bond forfeiture (Art. 2 § 6, Okl. Const.); (b) uniformity of procedure for judicial review of agency forfeitures of statutory bonds (Art. 5 § 46, Okl. Const.); (c) equal protection of the laws (14th Amend., U.S. Const., and the anti-discrimination component of the state due process clause, Art. 2 § 7, Okl. Const.); and (d) *de novo* appellate review of agency-found jurisdictional facts

(Due Process Clause of the 14th Amend., U.S. Const., Art. 2, § 7, Okl. Const). Today's dismissal exposes OTC's bond forfeitures to a serious risk of fundamental-law attacks on the fairness and neutrality of the agency's antecedent process. **The court may neither (a) deprive OTC's sureties of access to corrective relief by direct appeal nor (b) make OTC's forfeitures—now made nonreviewable—vulnerable to a collateral attack in the district-court proceedings to follow.** What is even worse, today's opinion impermissibly transforms OTC bonds into a status markedly different from that applicable to other agency or district-court statutory undertakings of like nature. **It makes them impervious to all direct attacks upon forfeiture orders.**

¶ 23 I would entertain the surety's quest for corrective relief by **taking cognizance of this cause as an appeal for review of OTC's bond forfeiture—an agency order clearly appealable as final.**

¶ 24 **Aside from the vice of being fraught with state and federal constitutional infirmities, the court's pronouncement also spawns another equally serious mischief. Its aftermath will more than likely deter insurers from posting OTC bonds for needy taxpayers.** The grossly excessive exposure that is being foisted on sureties by today's pronouncement should prove to be an insuperable barrier to all those business entities which attempt to purchase undertakings in order to secure their potential liability for tax revenue collected from others. By leaving the surety to OTC's tender mercy, the court's pronouncement helps the agency kill the goose that laid the golden egg.

---

limitations with respect to that obligation to expire." *Restatement, supra* at § 34(3) comment (e). *State v. Bi–States Construction Co., Inc.,* 269 N.W.2d 455, 457 (Iowa 1978); *Iola State Bank v. Biggs,* 233 Kan. 450, 662 P.2d 563, 570 (1983); *Bass v. Harkreader,* 162 Tenn. 518, 39 S.W.2d 275, 276 (1931); *Lutz v. Frick Co.,* 242 Ind. 599, 181 N.E.2d 14, 16 (1962); *Alabama Surface Mining Reclamation v. Commercial Stand. Ins. Co.,* 469 So.2d 619, 620 (Ala.App.1985). "If the obli-

gee impairs the secondary obligor's recourse against the principal obligor by ... (e) failing to institute an action before expiration of the statute of limitations governing the underlying obligation (§ 43) ... the secondary obligor is discharged from its duties pursuant to the second obligation to the extent set forth in those sections in order to prevent the impairment of recourse from causing the secondary obligor a loss." *Restatement, supra,* at § 37(3)(e).